John P. Aldrich, Esq.
Nevada State Bar No.:  6877
**ALDRICH LAW FIRM, LTD**
1601 S. Rainbow Blvd., Suite 160
Las Vegas, Nevada  89146
(702) 853-5490

Kip B. Shuman, Esq.
Rusty E. Glenn, Esq.
**THE SHUMAN LAW FIRM**
885 Arapahoe Avenue
Boulder, CO  80302
(303) 861-3003
(303) 484-4886 (fax)

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEVADA

| | |
|---|---|
| IN RE RINO INTERNATIONAL CORPORATION DERIVATIVE LITIGATION | ) Lead Case No. 2:10-cv-02209-MMD-GWF ) (Consolidated with case no. 2:10-cv-02244-) KJD-DWF) |
| This Document Relates To: | ) ) ) |
| ALL ACTIONS | ) ) ) |

**PLAINTIFFS' MEMORANDUM AND POINTS OF AUTHORITIES IN SUPPORT OF
PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF
<u>DERIVATIVE SETTLEMENT</u>**

Plaintiffs Andrew Nguyen and Robert Binnewies (collectively, "Nevada Federal Plaintiffs"),[1] by and through their undersigned counsel, hereby submit this memorandum of law in support of their unopposed motion for preliminary approval of the settlement (the

---

[1] All capitalized terms not defined herein shall have the same definitions as set forth in the Stipulation of Settlement dated November 28, 2012 (the "Stipulation") (attached as Exhibit 1 to this Motion).

1

"Settlement") of the above-captioned shareholder derivative action (the "Nevada Federal Action") brought on behalf of RINO International Corporation ("RINO" or the "Company").[2]

## I.    INTRODUCTION

Nevada Federal Plaintiffs are pleased to inform the Court that after extensive, arm's-length negotiations, the parties to the Nevada Federal Action have agreed to the Settlement, which fully, finally, and forever resolves, discharges, and settles the Released Claims while providing substantial benefits to RINO and Current RINO Shareholders.  As a result of the filing, prosecution, and proposed Settlement of the Actions, RINO will receive the benefit of approximately $7 million from certain of the Individual Defendants and/or their insurance carrier, which RINO will cause to be used to settle the related securities class action captioned *Stream SICAV v. RINO International Corp., et al.,* Case No. 2:10-cv-08695-DDP-VBK (the "Securities Action").  In addition, the Settlement provides that in recognition of the substantial benefits conferred on RINO and Current RINO Shareholders, the Company, through its Board exercising its independent business judgment, shall, subject to the Court's approval, pay Plaintiff's Counsel an agreed-to award of attorneys' fees and expenses in the total amount of $475,000.00 (the "Fee Award").

The Settlement constitutes an appropriate resolution of litigation of substantial complexity and is within the range of possible approval, thereby satisfying the test courts typically employ in reviewing a settlement for preliminary approval.  Accordingly, Nevada

---

[2] Pursuant to the Stipulation, this Settlement also intends to settle claims raised in the California State Action and the Nevada State Action.  Accordingly, within ten (10) business days after the issuance of the Final Order and Judgment by the Court finally approving the Settlement, the Parties and their Counsel shall jointly apply for orders dismissing with prejudice Plaintiffs' Released Claims and Defendants' Released Claims in the California State Action and the Nevada State Action.  Stip. at ¶3.5.  Collectively, the Nevada Federal Action, the California State Action,

Federal Plaintiffs respectfully request the Court to: (i) preliminarily approve the Settlement set forth in the Stipulation; (ii) approve the form of the Notice, and direct the publication of the Notice as contemplated by the Stipulation; and (iii) schedule a hearing to entertain any objections by Current RINO Shareholders and to consider final approval of the Settlement (the "Settlement Hearing").

## II.   PROCEDURAL HISTORY OF THE ACTIONS AND THE PARTIES' SETTLEMENT NEGOTIATIONS

The Actions are shareholder derivative actions brought on behalf of RINO. According to the complaint in the Nevada Federal Action, RINO, through its subsidiaries, operates as an environmental protection and remediation company in the People's Republic of China. The Nevada Federal Action alleges that the Company engages in designing, manufacturing, installing, and servicing wastewater treatment and flue gas desulphurization ("FGD") equipment primarily for use in the iron and steel industry, and anti-oxidation products and equipment for use in the manufacture of hot rolled steel plate products. The Nevada Federal Action alleges that prior to the Company's announced restatement of its U.S.-reported financial results, Defendants had allegedly represented that FGD sales and service historically accounted for approximately 65-70% of RINO's U.S.-reported revenues.

On November 23, 2010, the Nevada State Counsel initiated the Actions with the filing of the first of two cases which were subsequently consolidated into the Nevada State Action. The Nevada State Court Action named certain parties as additional defendants who were not named in the Nevada Federal Action, including Moore Stephens Wurth Frazer & Torbet LLP and Frazer Frost LLP (the "Auditor Defendants"). The Auditor Defendants are not parties to the

and the Nevada State Action shall be referred to herein as the "Actions."

Stipulation.  Then, on December 8, 2010, the California State Counsel filed the first of two actions which eventually became the California State Action.  Next, on December 20, 2010, Nevada Federal Counsel filed the first of two actions which became the Nevada Federal Action. Finally, on January 21, 2011, the California Federal Action was filed in the U.S. District Court for the Central District of California by California Federal Plaintiffs, M. Aileen Morningstar ("Morningstar") and Alice Slettedahl ("Slettedahl").  The California Federal Plaintiffs are not parties to this Stipulation, although their claims are based on allegations that are substantively identical to those asserted in each of the Actions.

On March 4, 2011, the Nevada Federal Plaintiffs filed their Verified Consolidated Shareholder Derivative Complaint, which ultimately became the litigated pleading in the Nevada Federal Action.

The Actions are brought on RINO's behalf and allege violations of state and/or federal law relating to three central issues.  Specifically, the Actions allege that: (i) RINO's Board of Directors (the "Board") permitted and/or approved the booking of material amounts of revenue from third parties that were not in fact RINO's "customers," as they were represented to be; (ii) the Board approved an interest-free loan to Dejun Zou and Jianping Qiu (RINO's co-founders) to purchase the California Houses on the same day that RINO raised $100 million from a secondary public offering; and (iii) the Board signed and filed financial results with the U.S. Securities Exchange Commission (the "SEC") which were materially different from those filed with China's State Administration for Industry and Commerce (the "SAIC").

On March 14, 2011, Defendants RINO and Johnson moved to dismiss and/or stay the Nevada Federal Action, which the Nevada Federal Plaintiffs timely opposed on April 29, 2011.[2] On November 2, 2011, this Court granted Defendants' motions to dismiss the Nevada Federal Action without prejudice and with leave to amend (the "Dismissal Order").

In response to the Dismissal Order, on December 1, 2011, the Nevada Federal Plaintiffs filed a Motion for Leave to file an Amended Consolidated Complaint (the "Motion to Amend") and attached the proposed Amended Consolidated Complaint (the "Amended Complaint"), which purported to cure the prior defects that formed the basis of the Dismissal Order.  This Court granted the Nevada Federal Plaintiffs' Motion to Amend and permitted the filing of the Amended Complaint on January 20, 2012.

Settlement discussions related to the Actions occurred intermittently throughout 2011, and while the Parties made some progress, no settlement was reached.  By early 2012, however, settlement discussions had progressed substantially to the point where Plaintiffs' Counsel and Defendants' Counsel jointly agreed to extensions of time for Defendants to respond to the Amended Complaint in the hope that a settlement would be reached and the time and expense of further litigation could be avoided.  Subsequently, after a series of extensive discussions and arm's-length negotiations, conducted with the personal aid and involvement of the Hon. Daniel Weinstein (Ret.) and Liz Hasse (collectively, the "Mediator"), professional and experienced mediators, on April 4, 2012, the Parties agreed in principle to the terms required to settle the Actions.

---

[2] Defendant Zhang, who was not served until April 12, 2011, also filed a motion to dismiss on May 23, 2011.  The Nevada Federal Plaintiffs filed an opposition to Zhang's motion to dismiss

### III.   THE SETTLEMENT

As discussed above, the Parties, through their respective, highly experienced counsel have engaged in good-faith and protracted arm's-length negotiations to resolve the Actions. Their diligence and extensive discussions culminated in the Stipulation, which fully sets forth the terms and conditions of the Settlement.   As discussed above, as a result of the filing, prosecution, and proposed Settlement of the Actions, RINO will receive the benefit of approximately $7 million from certain of the Individual Defendants and/or their insurance carrier, which RINO will cause to be used to settle the related Securities Action.

### IV.   ARGUMENT

#### A.   The Role of the Court in the Approval of a Derivative Settlement

There is a strong policy favoring compromises that resolve litigation, "particularly in class actions and other complex cases where substantial judicial resources can be conserved by avoiding formal litigation." *In re GMC Pick-Up Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d 768, 784 (3d Cir. 1995).   The "'[s]ettlements of shareholder derivative actions are particularly favored because such litigation "is notoriously difficult and unpredictable.'"" *Cohn v. Nelson*, 375 F. Supp. 2d 844, 852 (E.D. Mo. 2005) (citations omitted).

Federal Rule of Civil Procedure 23.1 ("Rule 23.1") governs a district court's analysis of the fairness of a settlement of a shareholder derivative action. *In re Pac. Enterprises Sec. Litig.*, 47 F.3d 373, 377 (9th Cir. 1995).   Under Rule 23.1, a derivative action "may be settled, voluntarily dismissed, or compromised only with the court's approval.   Notice of a proposed

---

on June 8, 2011.

settlement, voluntary dismissal, or compromise must be given to shareholders or members in the manner that the court orders." Fed. R. Civ. P. 23.1(c).

The Ninth Circuit has provided factors which may be considered in evaluating the fairness of a settlement:

> The district court's ultimate determination will necessarily involve a balancing of several factors which may include, among others, some or all of the following: the strength of plaintiffs' case; the risk, expense, complexity, and likely duration of further litigation; the risk of maintaining class action status throughout the trial; the amount offered in settlement; the extent of discovery completed, and the stage of the proceedings; the experience and views of counsel; the presence of a governmental participant; and the reaction of the class members to the proposed settlement.

*Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615, 625 (9th Cir. 1982).

The district court must exercise "sound discretion" in approving a settlement. *Ellis v. Naval Air Rework Facility*, 87 F.R.D. 15, 18 (N.D. Cal. 1980), *aff'd*, 661 F.2d 939 (9th Cir. 1981); *Torrisi v. Tucson Elec. Power Co.*, 8 F.3d 1370, 1375 (9th Cir. 1993). Therefore, in exercising its discretion, "the court's intrusion upon what is otherwise a private consensual agreement negotiated between the parties to a lawsuit must be limited to the extent necessary to reach a reasoned judgment that the agreement is not the product of fraud or overreaching by, or collusion between, the negotiating parties, and that the settlement, taken as a whole, is fair, reasonable and adequate to all concerned." *Officers for Justice*, 688 F.2d at 625. The Ninth Circuit defines the limits of the inquiry to be made by the court in the following manner:

> Therefore, the settlement or fairness hearing is not to be turned into a trial or rehearsal for trial on the merits. Neither the trial court nor this court is to reach any ultimate conclusions on the contested issues of fact and law which underlie the merits of the dispute, for it is the very uncertainty of outcome in litigation and avoidance of wasteful and expensive litigation that induce consensual settlements. The proposed settlement is not to be judged against a hypothetical or speculative measure of what *might* have been achieved by the negotiators.

*Id.* (emphasis in original).

**B.     The Settlement Should be Preliminarily Approved and Ultimately
Finally Approved After Notice to Current RINO Shareholders**

At the Settlement Hearing, the Court will have before it detailed papers submitted in support of the Settlement and will be asked to make a determination as to whether the Settlement is fair, reasonable, and adequate and in the best interest of those whose claims will be extinguished.  While Nevada Federal Plaintiffs believe that the Settlement merits this Court's final approval, at this time Nevada Federal Plaintiffs respectfully request only that the Court grant preliminary approval of the Settlement.  To grant preliminary approval, the Court need only conclude that a settlement of the claims against the Individual Defendants is "within the range of possible approval" to preliminarily approve the Settlement for the purposes of providing notice and holding a future fairness hearing.[3]

Nevada Federal Plaintiffs respectfully submit that this Court may easily find that the Settlement is "within the range of possible approval."  As a threshold matter, the Settlement was reached after extensive arm's-length negotiations between and among counsel for the Plaintiffs and the Individual Defendants, and provides substantial benefits to the Company and its shareholders while eliminating the expense, risk, and delay inherent in such complex litigation, including the very real risk of no recovery.  Moreover, the Company approved the Settlement,

---

[3]     As the *Manual for Complex Litigation* explains:

> If the preliminary evaluation of the proposed settlement does not disclose grounds to doubt its fairness or other obvious deficiencies, such as unduly preferential treatment of class representatives or of segments of the class, or excessive compensation for attorneys, and appears to fall within the range of possible approval, the court should direct that notice under Rule 23(e) be given to the class members of a formal fairness hearing, at which arguments and evidence may be presented in support of and in opposition to the settlement.

*Manual for Complex Litigation* §30.41, at 237 (3d ed. 1995).

concluding the Settlement of the Actions under the terms set forth in the Stipulation is in the best interest of the Company, and confers substantial benefits to RINO.  Under these circumstances, Nevada Federal Plaintiffs respectfully submit that the Settlement is "within the range of possible approval" and should be preliminarily approved.

Nevada Federal Plaintiffs respectfully submit that the Settlement is an excellent result for RINO and Current RINO Shareholders.  In connection with the Settlement of the Actions, RINO has received a net benefit of approximately $7 million from certain of the Individual Defendants and/or their insurance carrier, which RINO will cause to be used to settle the related Securities Action.  RINO and the Individual Defendants have acknowledged that RINO received this benefit only as a result of the filing, prosecution, and proposed settlement of the Actions.

Further, reference to some of the factors considered by courts in granting final approval of derivative and class action settlements lends support to the Nevada Federal Plaintiffs' belief that the Settlement should not only be preliminarily approved, *i.e.*, is within the range of possible approval, but also finally approved after Notice to Current RINO Shareholders.  *Officers for Justice*, 688 F.2d at 625.  In determining whether a settlement is fair, courts focus on whether the settlement was reached as a result of good faith bargaining at arm's length without collision.  *See In re Jiffy Lube Sec. Litig.*, 927 F.2d 155, 159 (4th Cir. 1991).  As discussed above, each element of the Settlement was extensively negotiated between experienced counsel with a firm understanding of the strengths and weaknesses of the claims and defenses asserted, is the product of significant give and take by the Parties, and was reached only after extensive negotiations between counsel for the Plaintiffs and the Individual Defendants.

An evaluation of the benefits of a settlement must also be tempered by recognition that any compromise involves concessions on the part of all of the settling parties.  Indeed, "the very

essence of a settlement is compromise, 'a yielding of absolutes and an abandoning of highest hopes.'" *Officers for Justice*, 688 F.2d at 624 (citations omitted). Although Nevada Federal Plaintiffs believe that the claims asserted in the Actions were meritorious, liability was by no means a foregone conclusion. Had Nevada Federal Plaintiffs continued to litigate, there was a risk that they would not have been successful on a motion(s) to dismiss for failure to plead that demand on the Board was futile and/or failure to state a claim for relief.

Even if Nevada Federal Plaintiffs were successful and survived the motion to dismiss stage, continued litigation would be extremely complex, costly, and of substantial duration. Document discovery would need to be completed, depositions would need to be taken, experts would need to be designated, and expert discovery conducted. The RINO and the Individual Defendants' expected motions for summary judgment would have to be briefed and argued and a trial would have to be held. Indeed, significant risks remained in getting past the RINO and the Individual Defendants' anticipated motions for summary judgment and obtaining a favorable judgment after trial. Even if liability was established, the amount of recoverable damages would still have posed significant issues and would have been subject to further litigation. The Settlement eliminates these and other risks of continued litigation, including the very real risk of no recovery after several more years of litigation, while providing RINO and Current RINO Shareholders substantial benefits. *See Officers for Justice*, 688 F.2d at 625.

It is also clear that even a victory at trial is no guarantee that the judgment would ultimately be sustained on appeal or by the trial court. For example, in *In re Apollo Group, Inc. Sec. Litig.*, No. CV 04-2147-PHX-JAT, 2008 U.S. Dist. LEXIS 61995 (D. Ariz. Aug. 4, 2008), the court on a motion for judgment as matter of law, overturned a jury verdict of $277 million in favor of shareholders based on insufficient evidence presented at trial to establish loss causation.

Add to these post-trial and appellate risks, the difficulty and unpredictability of a lengthy and complex trial – where witnesses could suddenly become unavailable or the fact finder could react to the evidence in unforeseen ways – and the benefits of the Settlement become all the more apparent.

Significant weight also should be attributed to the belief of experienced counsel that settlement is in the best interest of those affected by the settlement. *Officers for Justice*, 688 F.2d at 625. Plaintiffs, RINO, and the Individual Defendants have independently considered the Settlement and all agree that it is in the best interests of RINO and Current RINO Shareholders. Here, Plaintiffs' Counsel has extensive experience in the area of shareholder representative litigation. As a result of extensive experience in these types of cases, Plaintiffs' Counsel has a unique insight into the legal and factual issues presented. In particular, Plaintiffs' Counsel used that expertise and experience to effectively and efficiently prosecute the Actions and reach an outstanding result for RINO and Current RINO Shareholders.

Finally, the negotiated the Fee Award to be paid to Plaintiffs' Counsel is reasonable. In recognition of the substantial benefits bestowed upon RINO, RINO has agreed that Plaintiffs' Counsel be paid a Fee Award of $475,000 for Plaintiffs' Counsel's attorneys' fees and expenses. Here, counsel for Plaintiffs and RINO negotiated the Fee Award after the principal terms of the Settlement were agreed, which resulted in a fee and expense provision that is consistent with the benefits conferred upon RINO and Current RINO Shareholders. The United States Supreme Court has endorsed this type of consensual resolution of attorneys' fees issues in these kinds of cases as the ideal toward which litigants should strive. *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983) ("A request for attorney's fees should not result in a second major litigation. Ideally, of course, litigants will settle the amount of a fee."); *Ingram v. Coca-Cola Co.*, 200 F.R.D. 685, 695

11

(N.D. Ga. 2001) (where, as here, there is no evidence of collusion and no detriment to the parties, the court should give "substantial weight to a negotiated fee amount.").

Accordingly, for all of the foregoing reasons, Nevada Federal Plaintiffs respectfully submit that preliminary approval of the Settlement should be granted.

### C.    The Incentive Awards for Plaintiffs are Fair and Reasonable

In connection with the approval of the proposed Settlement, Plaintiffs request to receive a payment of $2,000 for their time, effort and service as representative plaintiffs in the Actions. Plaintiffs understand that "[c]ourts routinely approve incentive awards to compensate named plaintiffs for the services they provided and the risks they incurred during the course of the class action litigation." *In re Lorazepam & Clorazepate Antitrust Litig.*, 205 F.R.D. 369, 400 (D.D.C. 2002); *In re McKesson HBOC, Inc. ERISA Litig.*, 391 F. Supp. 2d 844, 851 (N.D. Cal. 2005) (approving $5,000 incentive awards); *In re Paypal Litigation*, No. C-02-1227-JF PVT, 2004 WL 2445244, at *1 (N.D. Cal. Oct. 13, 2004) (approving $2,500 incentive awards).  As a result of Plaintiffs efforts on behalf of RINO, the Company has received a direct financial benefit as a result of the litigation.

Plaintiffs only seek approval to notify Current RINO Shareholders of the requested Incentive Awards in the Notice to shareholders at this time.  Defendants take no position on the Incentive Awards.

### V.    NOTICE

Plaintiffs seek Court approval of the form and manner of the Notice, attached to the Stipulation as Exhibit B.  The Stipulation provides that the Notice shall be published once in *Investor's Business Daily*.  The Notice provides information relating to: (i) the Settlement terms; (ii) the date of the Settlement Hearing; and (iii) the protocol for Current RINO

Shareholders to follow to comment upon the proposed Settlement.

Rule 23.1 does not require individual notice of a shareholder derivative settlement, as is required for a class action, but rather provides for notice only "in the manner that the court orders," thus affording the Court substantial discretion. Because no individual claims are at stake, and because a direct notice program would be so costly as to swallow up the benefits of most derivative settlements, notice of dismissal of derivative settlements under Rule 23.1 by publication only is appropriate. Thus, the form and manner of the proposed Notice to Current RINO Shareholders constitutes the best notice practicable under the circumstances and satisfies the requirements of Rule 23.1, due process, and any other applicable law. *Carlough v. Amchem Prods., Inc.,* 158 F.R.D. 314, 323 (E.D. Pa. 1993) ("notice by publication may be the principal means for informing [shareholders] of their ... rights") (citing *Manual Complex Litigation* (Third), *supra*, §30.211, at 221).

## VI.    SCHEDULE OF EVENTS

Plaintiffs' Counsel propose the following schedule for the publication of the proposed Notice, the filing of submissions in support of final approval of the Settlement, Current RINO Shareholder objections and any response thereto, and the Settlement Hearing. This schedule is similar to those used and approved by courts in derivative settlements and provides due process to Current RINO Shareholders with respect to their rights concerning the Settlement.

| Event | Time for Compliance |
|---|---|
| Deadline for publishing the Notice once in *Investor's Business Daily* | Not later than ten (10) business days following the entry of the Preliminary Approval Order |
| Deadline for filing of papers in support of the final approval of Settlement | At least twenty-eight (28) calendar days prior to the Settlement Hearing |

13

| Event | Time for Compliance |
|---|---|
| Deadline that any objections to the Settlement must be filed with the Court | At least fourteen (14) calendar days prior to the Settlement Hearing |
| Deadline for filing of any response to objections, if any, by Current RINO Shareholders | At least seven (7) calendar days prior to the Settlement Hearing |
| Settlement Hearing date | Fifty-five (55) calendar days after entry of the Preliminary Approval Order, or later at the Court's convenience |

## VII.   CONCLUSION

Given the substantial benefits the Settlement provides to RINO and Current RINO Shareholders, Nevada Federal Plaintiffs respectfully request the Court to: (i) preliminarily approve the proposed Settlement; (ii) approve the form and manner of the Notice and direct the publication of the Notice; and (iii) schedule the Settlement Hearing.

Dated: November 29, 2012             **ALDRICH LAW FIRM, LTD.**


*s/ John P. Aldrich*
John P. Aldrich, Esq.
Nevada Bar No. 6877
1601 S. Rainbow Blvd, Ste 160
Las Vegas, Nevada 89146
(702) 853-5490
(702) 227-1975 (fax)

*Local Counsel for Nevada Federal Plaintiffs*

**THE SHUMAN LAW FIRM**
Kip B. Shuman
Rusty E. Glenn
885 Arapahoe Avenue
Boulder, CO 80302
(303) 861-3003
(303) 484-4886 (fax)

14

**THE WEISER LAW FIRM, P.C.**
Robert B. Weiser
Brett D. Stecker
Jeffrey J. Ciarlanto
22 Cassatt Avenue
First Floor
Berwyn, PA 19312
Phone: (610) 225-2677
Fax: (610) 408-8062

**THE WEISER LAW FIRM, P.C.**
Kathleen A. Herkenhoff
12707 High Bluff Drive, Suite 200
San Diego, CA 92130
Phone: (858) 794-1441
Fax: (858) 794-1450

*Lead Counsel for Nevada Federal Plaintiffs*

# Exhibit 1

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEVADA

| | |
|---|---|
| IN RE RINO INTERNATIONAL CORPORATION DERIVATIVE LITIGATION | ) Lead Case No. 2:10-cv-02209-MMD-GWF<br>) (Consolidated with case no. 2:10-cv-02244-<br>) KJD-DWF) |
| This Document Relates To: | )<br>)<br>) |
| ALL ACTIONS | )<br>)<br>) |

## STIPULATION AND AGREEMENT OF SETTLEMENT

Subject to the approval of the Court, and pursuant to Federal Rule of Civil Procedure 23.1(c), this Stipulation and Agreement of Settlement (the "Stipulation"),[1] dated November 28, 2012, is made and entered into by and among the following Parties (as defined herein), each by and through their respective counsel of record: (i) Nevada Federal Plaintiffs Mark Weinstock ("Weinstock"), Andrew Nguyen ("Nguyen") and Robert Binnewies ("Binnewies"), Nevada State Plaintiffs Richard Elipani ("Elipani") and Norman Miller ("Miller"), and California State Plaintiffs Daniel Vitale ("Vitale") and Timothy B. Nishitani ("Nishitani") (collectively, "Plaintiffs"), on behalf of themselves and derivatively on behalf of RINO International Corporation ("RINO," the "Company," or the "Nominal Defendant"); (ii) nominal defendant RINO; and (iii) Kennith C. Johnson and Weiguo Zhang (together with RINO, the "Defendants"). This Stipulation is intended by the Parties to fully, finally, and forever compromise, resolve, discharge, and settle the Plaintiffs' Released Claims (as defined herein), upon the terms and subject to the conditions set forth herein.

---

[1] Unless otherwise stated, all capitalized terms shall have the same meaning as set forth in Section IV below.

1

## I.   INTRODUCTION

According to the complaint in the Nevada Federal Action (defined below), RINO, through its subsidiaries, operates as an environmental protection and remediation company in the People's Republic of China. The Nevada Federal Action alleges that the Company engages in designing, manufacturing, installing, and servicing wastewater treatment and flue gas desulphurization ("FGD") equipment primarily for use in the iron and steel industry, and anti-oxidation products and equipment for use in the manufacture of hot rolled steel plate products. The Nevada Federal Action alleges that prior to the Company's announced restatement of its U.S.-reported financial results, Defendants had allegedly represented that FGD sales and service historically accounted for approximately 65-70% of RINO's U.S.-reported revenues.

On November 23, 2010, the Nevada State Counsel initiated the Actions with the filing of the first of two cases which were subsequently consolidated into the Nevada State Action. The Nevada State Court Action named certain parties as additional defendants who were not named in the Nevada Federal Action, including Moore Stephens Wurth Frazer & Torbet LLP and Frazer Frost LLP (the "Auditor Defendants"). The Auditor Defendants are not parties to this Stipulation. Then, on December 8, 2010, the California State Counsel filed the first of two actions which eventually became the California State Action. Next, on December 20, 2010, Nevada Federal Counsel filed the first of two actions which became the Nevada Federal Action. Finally, on January 21, 2011, an additional shareholder derivative action was filed in the U.S. District Court for the Central District of California (the "California Federal Action") by California Federal Plaintiffs, M. Aileen Morningstar ("Morningstar") and Alice Slettedahl ("Slettedahl"). The California Federal Plaintiffs are not parties to this Stipulation, although their claims are based on allegations that are substantively identical to those asserted in each of the Actions.

On March 4, 2011, the Nevada Federal Plaintiffs filed their Verified Consolidated Shareholder Derivative Complaint, which ultimately became the litigated pleading in the Nevada Federal Action.

2

The Actions are brought on RINO's behalf and allege violations of state and/or federal law relating to three central issues.  Specifically, the Actions allege that: (i) RINO's Board of Directors (the "Board") permitted and/or approved the booking of material amounts of revenue from third parties that were not in fact RINO's "customers," as they were represented to be; (ii) the Board approved an interest-free loan to Dejun Zou and Jianping Qiu (RINO's co-founders) to purchase the California Houses on the same day that RINO raised $100 million from a secondary public offering; and (iii) the Board signed and filed financial results with the U.S. Securities Exchange Commission (the "SEC") which were materially different from those filed with China's State Administration for Industry and Commerce (the "SAIC").

On March 14, 2011, Defendants RINO and Johnson moved to dismiss and/or stay the Nevada Federal Action, which the Nevada Federal Plaintiffs timely opposed on April 29, 2011.[2] On November 2, 2011, this Court granted Defendants' motions to dismiss the Nevada Federal Action without prejudice and with leave to amend (the "Dismissal Order").

In response to the Dismissal Order, on December 1, 2011, the Nevada Federal Plaintiffs filed a Motion for Leave to file an Amended Consolidated Complaint (the "Motion to Amend") and attached the proposed Amended Consolidated Complaint (the "Amended Complaint"), which purported to cure the prior defects that formed the basis of the Dismissal Order.  This Court granted the Nevada Federal Plaintiffs' Motion to Amend and permitted the filing of the Amended Complaint on January 20, 2012.

Settlement discussions related to the Actions occurred intermittently throughout 2011, and while the Parties made some progress, no settlement was reached.  By early 2012, however, settlement discussions had progressed substantially to the point where Plaintiffs' Counsel and Defendants' Counsel jointly agreed to extensions of time for Defendants to respond to the

---

[2] Defendant Zhang, who was not served until April 12, 2011, also filed a motion to dismiss on May 23, 2011.  The Nevada Federal Plaintiffs filed an opposition to Zhang's motion to dismiss on June 8, 2011.

1   Amended Complaint in the hope that a settlement would be reached and the time and expense of

2   further litigation could be avoided.  Subsequently, after a series of extensive discussions and

3   arm's-length negotiations, conducted with the personal aid and involvement of the Hon. Daniel

4   Weinstein (Ret.) and Liz Hasse (collectively, the "Mediator"), professional and experienced

5   mediators, on April 4, 2012, the Parties agreed in principle to the terms required to settle the

6   Actions.

7   **II.     PLAINTIFFS' COUNSEL'S INVESTIGATION AND RESEARCH,**
8   **        PLAINTIFFS' CLAIMS, AND THE BENEFITS OF SETTLEMENT**

9        Plaintiffs' Counsel have conducted an extensive investigation relating to the claims and

10  the underlying events alleged in the Actions including, but not limited to: (1) inspecting,

11  analyzing, and reviewing RINO's public filings with the U.S. Securities and Exchange

12  Commission ("SEC"), press releases, announcements, transcripts of investor conference calls,

13  and news articles; (2) drafting and filing the various complaints in the Actions, including

14  multiple detailed consolidated complaints; (3) researching the applicable law with respect to the

15  claims asserted in the Actions and the potential defenses thereto; (4) researching corporate

16  governance issues; and (5) exchanging certain information and participating in extensive, in-

17  person settlement discussions with Defendants' Counsel and the Mediator.  Plaintiffs' Counsel

18  believe that the claims asserted in the Actions have merit and that their investigation supports

19  the claims asserted.

20       Without conceding the merit of any of Defendants' defenses or the lack of merit of any

21  of their own allegations, and solely in order to avoid the potentially protracted time, expense,

22  and uncertainty associated with continued litigation, including potential trial(s) and appeals,

23  Plaintiffs have concluded that it is desirable that the Actions be fully and finally settled in the

24  manner and upon the terms and conditions set forth in this Stipulation.  Plaintiffs and Plaintiffs'

25  Counsel recognize the significant risk, expense, and length of continued proceedings necessary

26  to prosecute the Actions against the Defendants through trial(s) and possible appeals.  Plaintiffs'

27  Counsel also have taken into account the uncertain outcome and the risk of any litigation,

28

4

especially in complex cases such as the Actions, as well as the difficulties and delays inherent in such litigation. Based on their evaluation, Plaintiffs and Plaintiffs' Counsel have determined that the Settlement is in the best interests of Plaintiffs, RINO, and Current RINO Shareholders, and have accordingly agreed to settle the Actions upon the terms and subject to the conditions set forth herein.

## III.  DEFENDANTS' DENIALS OF WRONGDOING AND LIABILITY

The Defendants have denied and continue to deny that they have committed or attempted to commit any violations of law, any breach of fiduciary duty owed to RINO or its shareholders, or any other wrongdoing whatsoever. Without admitting the validity of any of the claims Plaintiffs have asserted in the Actions, or any liability with respect thereto, the Defendants, including RINO, have concluded that it is desirable that the claims be settled on the terms and subject to the conditions set forth herein. Defendants are entering into this Settlement because it will eliminate the uncertainty, distraction, disruption, burden, risk, and expense of further litigation. Further, Defendants acknowledge that the Settlement is fair, reasonable, adequate, and in the best interests of RINO and Current RINO Shareholders.

Neither this Stipulation, nor any of its terms or provisions, nor entry of the Final Order and Judgment, nor any document or exhibit referred to by or attached to this Stipulation, nor any action taken to carry out this Stipulation, is or may be construed or used as evidence of the validity of any of Plaintiffs' Released Claims, or as an admission by or against any Defendant of any fault, wrongdoing, or concession of liability whatsoever.

## IV.  TERMS OF STIPULATION AND AGREEMENT OF SETTLEMENT

Plaintiffs, on behalf of themselves and derivatively on behalf of RINO), and Defendants, by and through their respective counsel of record, hereby stipulate and agree that, subject to this Court's approval, the Actions and the Released Claims shall be finally and fully compromised, settled, and released, and the Actions shall be dismissed with prejudice, as to all Parties, upon the terms and subject to the conditions set forth herein as follows:

5

## 1. Definitions

As used in this Stipulation, the following terms have the meanings specified below:

1.1 "Actions" means, collectively, the Nevada Federal Action, the Nevada State Action, and the California State Action. "Actions" expressly excludes the California Federal Action.

1.2 "California Federal Action" means *Morningstar, et al. v. Jianping et al.*, Case No. 2:11-cv-00655-DDP-VBK(x), filed in the U.S. District Court for the Central District of California.

1.3 "California Federal Counsel" means, collectively, (i) Rosman & Germain LLP, 16311 Ventura Blvd., Suite 1200, Encino, CA 91436; and (ii) Kessler Topaz Meltzer & Check, LLP, 280 King of Prussia Road, Radnor, PA 19087.

1.4 "California Federal Securities Class Action" means the related securities class action captioned *Stream SICAV v. RINO International Corp. et al.*, Case No. 2:10-cv-08695-DDP-VBK, filed in the U.S. District Court for the Central District of California.

1.5 "California Federal Plaintiffs" means, collectively, Morningstar and Slettedahl.

1.6 "California Houses" means the two parcels of real property that Dejun Zou and Jianping Qiu own or which is held for them, located at (1) 31232 Via Colinas, Coto de Caza, 94679; and (2) 6 Palma Valley, Coto de Caza, 92679, both in Orange County, California.

1.7 "California State Action" means *In re RINO International Corporation Shareholder Derivative Litigation*, Case No. 30-2010-00431481-CU-SL-CXC, filed in the Superior Court for the State of California for the County of Orange.

1.8 "California State Counsel" means, collectively, (i) Harwood Feffer LLP, 488 Madison Avenue, 8th Floor, New York, NY 10022; and (ii) Hulett, Harper & Stewart, LLP, 525 B Street, Suite 760, San Diego, CA 92101.

1.9 "California State Plaintiffs" means, collectively, Vitale and Nishitani.

1.10 "Court" refers to the United States District Court for the District of Nevada.

1.11   "Current RINO Shareholder" or "Current RINO Shareholders" means, for purposes of this Stipulation, any Persons (defined below) who owned RINO common stock as of the Execution Date of this Stipulation and who continue to hold their RINO common stock as of the date of the Settlement Hearing, excluding the Individual Defendants, any other officers and/or directors of RINO, members of their immediate families, and their legal representatives, heirs, successors, or assigns, or any entity in which any Individual Defendant has or had a controlling interest.

1.12   "Defendants" means, collectively, Nominal Defendant RINO and defendants Kennith C. Johnson and Weiguo Zhang. "Defendants" specifically does not include Moore Stephens Wurth Frazer & Torbet LLP and Frazer Frost LLP.

1.13   "Defendants' Counsel" means, collectively, (i) Shearman & Sterling LLP, Four Embarcadero Center, Suite 3800, San Francisco, CA 94111; (ii) Snell & Wilmer LLP, 3883 Howard Hughes Parkway, Suite 1100, Las Vegas, NV 89169; (iii) Ballard Spahr LLP, 100 North City Parkway, Suite 1750, Las Vegas, NV 89106; (iv) Davis Polk & Wardwell LLP, 1600 El Camino Real, Menlo Park, CA 94025; (v) Cooley LLP, Five Palo Alto Square, 3000 El Camino Real, Palo Alto, CA 94306; and (vi) Gordon Silver, 3960 Howard Hughes Parkway, 9th Floor, Las Vegas, NV 89169.

1.14   "Defendants' Released Claims" means, collectively, all actions, suits, claims, demands, rights, liabilities, and causes of action of every nature and description whatsoever, including both known claims and Unknown Claims, asserted or that might have been asserted in any forum by Defendants' Released Persons against Plaintiffs' Released Persons, which arise out of, are based on, or relate in any way, directly or indirectly, to the institution, prosecution, or settlement of the Actions (except for claims to enforce the Settlement). Defendants' Released Claims does not include any claims against Moore Stephens Wurth Frazer & Torbet LLP and Frazer Frost LLP. Nothing in this Stipulation is intended to alter in any way any of the Individual Defendants' indemnification rights arising under law or by contract with the

7

Company, or affect any agreement between or among any of the Individual Defendants, the Company and/or their insurer.

1.15   "Defendants' Released Persons" means each of the Defendants, the Individual Defendants, and, to the maximum extent permitted by law, each of Defendants' and Individual Defendants' immediate family members, spouses, heirs, executors, estates, administrators, trustees, assigns, and any trusts in which Defendants and Individual Defendants, or any of them, are settlors, or which are for the benefit of any Defendants and Individual Defendants and/or members of his or her immediate family; any entity in which a Defendant, an Individual Defendant and/or members of his or her family has a controlling interest; each of the Defendants' and Individual Defendants' present and former attorneys, legal representatives, and assigns in connection with the Actions; Defendants' and Individual Defendants' insurers, reinsurers and their representatives; and each of Defendants' and Individual Defendants' present and former directors and officers, agents, advisors, employees, affiliates, predecessors, successors, parents, subsidiaries, and divisions. Defendants' Released Persons specifically does not include Moore Stephens Wurth Frazer & Torbet LLP and Frazer Frost LLP.

1.16   "Effective Date" means the first date by which all of the events and conditions specified in ¶ 6.1 herein have been met or have occurred.

1.17   "Execution Date" means the date this Stipulation has been signed by all the signatories through their respective counsel.

1.18   "Fee Award" means the terms of the agreed-upon sum to be paid to Plaintiffs' Counsel for their attorneys' fees and expenses, detailed in ¶¶ 5.1-5.6, subject to Court approval, in recognition of the substantial benefits conferred upon RINO and Current RINO Shareholders by the filing, prosecution, and settlement of the Actions.

1.19   "Final" means the time when a judgment that has not been reversed, vacated, or modified in any way is no longer subject to appellate review, either because of disposition on appeal and conclusion of the appellate process or because of passage, without action, of time for seeking appellate review. More specifically, it is that situation when (1) either no appeal has

8

been filed and the time has passed for any notice of appeal to be timely filed in the Actions; or (2) an appeal has been filed and the court of appeals has either affirmed the judgment or dismissed that appeal and the time for any reconsideration or further appellate review has passed; or (3) a higher court has granted further appellate review and that court has either affirmed the underlying judgment or affirmed the court of appeals' decision affirming the judgment or dismissing the appeal.

1.20    "Final Order and Judgment" means the order and judgment to be rendered by the Court, substantially in the form attached hereto as Exhibit A.

1.21    "Individual Defendants" means, collectively, any and all persons named as a defendant in any of the Actions, specifically, Dejun Zou, Jianping Qiu, Xie Quan, Kennith C. Johnson, Weiguo Zhang, Zejin Li, Ben Wang, Yi (Jenny) Liu, Li Yu, and Bruce Richardson.

1.22    "Nevada Federal Action" means *In re RINO International Corp. Derivative Litigation,* Lead Case No. 2:10-cv-02209-MMD-GWF, filed in the U.S. District Court for the District of Nevada.

1.23    "Nevada Federal Counsel" means, collectively, (i) The Weiser Law Firm, P.C., 22 Cassatt Avenue, First Floor, Berwyn, PA 19312; (ii) The Shuman Law Firm, 885 Arapahoe Avenue, Boulder, CO 80302; and (iii) Aldrich Law Firm, Ltd., 1601 South Rainbow Blvd., Suite 160, Las Vegas, NV 89146.

1.24    "Nevada Federal Plaintiffs" means, collectively, Weinstock, Nguyen and Binnewies.

1.25    "Nevada State Action" means *In re RINO International Corp. Derivative Action,* Case No. 10-OC-005291 B, Dept. No. I, filed in the First Judicial District Court of the State of Nevada in and for Carson City.

1.26    "Nevada State Counsel" means, collectively, (i) The O'Mara Law Firm, P.C., 311 E. Liberty Street, Reno, NV 89501; and (ii) Bottini & Bottini, Inc., 7817 Ivanhoe Ave., Suite 102, La Jolla, CA 92037.

1.27    "Nevada State Plaintiffs" means, collectively, Elipani and Miller.

9.

1.28    "Notice to Current RINO Shareholders" or "Notice" means the Notice of Pendency and Proposed Settlement of Shareholder Action, substantially in the form of Exhibit B attached hereto.

1.29    "Parties" means, collectively, each of the Plaintiffs (on behalf of themselves and derivatively on behalf of RINO), and each of the Defendants.

1.30    "Person" or "Persons" means an individual, corporation, limited liability corporation, professional corporation, partnership, limited partnership, limited liability partnership, association, joint stock company, estate, legal representative, trust, unincorporated association, government or any political subdivision or agency thereof, and any other business or legal entity, and his, her or its heirs, predecessors, successors, representatives, or assignees.

1.31    "Plaintiffs" means, collectively, Nevada State Plaintiffs, Nevada Federal Plaintiffs, and California State Plaintiffs.

1.32    "Plaintiffs' Counsel" means, collectively, Nevada State Counsel, Nevada Federal Counsel, and California State Counsel.

1.33    "Plaintiffs' Released Claims" means, collectively, all actions, suits, claims, demands, rights, liabilities, and causes of action of every nature, and description whatsoever, including both known claims and Unknown Claims, asserted or that might have been asserted in any forum by Plaintiffs' Released Persons, by any other shareholder derivatively on behalf of RINO, or by RINO, against each and every one of Defendants' Released Persons, that were or could have been alleged in the Actions, or that arise out of, are based on, or relate in any way, directly or indirectly, to the subject matter of the Actions or the facts, transactions, events, occurrences, acts, disclosures, statements, omissions or failures to act which were or could have been alleged in the Actions. "Plaintiffs' Released Claims" further includes any and all claims arising out of, based upon or related to the Settlement or resolution of the Actions, except for any alleged breaches of this Stipulation. "Plaintiffs' Released Claims" expressly excludes, however, all claims asserted in the related securities class action captioned *Stream SICAV v. RINO International Corp. et al.*, Case No. 2:10-cv-08695-DDP-VBK, pending in the U.S.

10

District Court for the Central District of California, to the extent of the claims stated in that action. Plaintiffs' Released Claims also specifically does not include the claims asserted by the Nevada State Plaintiffs against Moore Stephens Wurth Frazer & Torbet LLP and Frazer Frost LLP.

1.34   "Plaintiffs' Released Persons" means each of the Plaintiffs and each of their immediate family members, spouses, heirs, executors, administrators, successors, trustees, attorneys, personal or legal representatives, advisors, estates, assigns, and agents.

1.35   "Plaintiffs' Settlement Counsel" means The Weiser Law Firm, P.C.

1.36   "Preliminary Approval Order" means the Order to be entered by the Court, substantially in the form of Exhibit C attached hereto, including, *inter alia*, preliminarily approving the terms and conditions of the Settlement as set forth in this Stipulation, directing that Notice be provided to Current RINO Shareholders, and scheduling a Settlement Hearing to consider whether the Stipulation and Fee Award should be approved.

1.37   "Released Claims" means Defendants' Released Claims and Plaintiffs' Released Claims.

1.38   "RINO," the "Company" or "Nominal Defendant" means RINO International Corporation and includes all of its subsidiaries, predecessors, successors, affiliates, officers, directors, employees, and agents.

1.39   "Settlement" means the settlement documented in this Stipulation.

1.40   "Settlement Hearing" means a hearing by the Court to review this Stipulation and determine: (i) whether to enter the Final Order and Judgment; and (ii) all other matters properly before the Court.

1.41   "Stipulation" means this Stipulation and Agreement of Settlement.

1.42   "Unknown Claims" means any of Plaintiffs' Released Claims and Defendants' Released Claims that any releasing Person does not know or suspect exists in his, her, or its favor at the time of the release of the Released Claims, including, without limitation, those claims which, if known, might have affected the decision to enter into, or not object to, this

11

Settlement.   With respect to any and all Released Claims, the Parties expressly waive, relinquish, and release, and each of RINO's shareholders shall be deemed to have, and by operation of the Judgment shall have, expressly waived, relinquished, and released, any and all provisions, rights, and benefits conferred by or under California Civil Code Section 1542 ("§ 1542") or any other law of the United States or any state or territory of the United States, or principle of common law, which is similar, comparable, or equivalent to § 1542, which provides:

> A general release does not extend to claims which the creditor does not know or suspect to exist in his or her favor at the time of executing the release, which if known by him or her must have materially affected his or her settlement with the debtor.

The Parties acknowledge, and the RINO shareholders shall be deemed by operation of the Judgment to have acknowledged, that they may discover facts in addition to or different from those now known or believed to be true by them, with respect to Plaintiffs' Released Claims and Defendants' Released Claims in the Settlement, as the case may be, but it is the intention of the Parties, and it shall be deemed by operation of the Judgment to have been the intention of the RINO shareholders, to completely, fully, finally, and forever compromise, settle, release, discharge, and extinguish any and all of Plaintiffs' Released Claims and Defendants' Released Claims known or unknown, suspected or unsuspected, contingent or absolute, accrued or unaccrued, apparent or unapparent, which currently exist, or heretofore existed, or may hereafter exist, and without regard to the subsequent discovery of additional or different facts.

**2.      Terms and Benefits of the Settlement**

2.1      As a result of the filing, prosecution, and proposed settlement of the Actions, RINO will receive the benefit of approximately $7 million from certain of the Individual Defendants and/or their insurance carrier, which RINO will cause to be used to settle the related securities class action captioned *Stream SICAV v. RINO International Corp. et al.*, Case No.

2:10-cv-08695-DDP-VBK, pending in the U.S. District Court for the Central District of California.

2.2     Defendants acknowledge that this Settlement will confer substantial benefits upon RINO and Current RINO Shareholders.

2.3     The Settlement specifically does not include the Nevada State Plaintiffs' claims against the Auditor Defendants. The Nevada State Plaintiffs and the Nevada State Counsel shall have the exclusive and sole ability to pursue any and all claims against the Auditor Defendants. Upon election and notice by the Nevada State Plaintiffs and Nevada State Counsel to the Defendants, Nominal Defendant RINO shall assign any and all rights it has against the Auditor Defendants to the Nevada State Plaintiffs. Such assignment shall include the assignment by RINO of any and all recovery obtained by the Nevada State Plaintiffs against the Auditor Defendants to the Current RINO Shareholders.

**3.     Procedure for Implementing the Settlement**

3.1     Within ten (10) business days after the close of escrow of the sale of the second of the California Houses to be sold, the Parties shall submit the Stipulation together with its exhibits to the Court and shall jointly apply for entry of the Preliminary Approval Order, substantially in the form of Exhibit C attached hereto, requesting, *inter alia*: (i) preliminary approval of the Settlement set forth in this Stipulation; (ii) approval of the method of providing Notice of pendency and proposed Settlement to Current RINO Shareholders; (iii) approval of the form of Notice attached hereto as Exhibit B; and (iv) a date for the Settlement Hearing.

3.2     Within ten (10) business days of the Court's entry of the Preliminary Approval Order, RINO shall cause the Notice to be published one time in *Investor's Business Daily*. All Notice costs shall be paid by RINO, the Individual Defendants and/or their insurance carrier. The Parties believe the content and manner of the proposed notice procedure constitutes adequate and reasonable notice to Current RINO Shareholders pursuant to applicable law.

3.3     Plaintiffs' Counsel shall request that the Court hold the Settlement Hearing after Notice is provided to Current RINO Shareholders to approve the Settlement and the unopposed

Fee Award request.  At the Settlement Hearing, Plaintiffs' Counsel shall request, and the Defendants shall not oppose, the Court's final approval of the Fee Award, as further discussed in Section 5 below.

3.4   If the Court approves the Settlement at the Settlement Hearing, the Parties will jointly request entry of the Final Order and Judgment by the Court, the entry of which is a condition of this Stipulation: (i) approving finally the Settlement set forth in the Stipulation as fair, adequate, and reasonable, and directing its consummation pursuant to its terms; (ii) finally approving the Fee Award; (iii) dismissing with prejudice all of Plaintiffs' Released Claims against Defendants' Released Persons; (iv) permanently barring and enjoining the institution and prosecution by Plaintiffs' Released Persons and anyone acting or purporting to act on behalf of RINO against Defendants' Released Persons in any court asserting any of Plaintiffs' Released Claims; (v) permanently barring and enjoining the institution and prosecution by Defendants' Released Persons of any action against Plaintiffs' Released Persons in any court asserting any of the Defendants' Released Claims; and (vi) containing such other and further provisions consistent with the terms of this Stipulation to which the Parties hereto consent in writing.

3.5   Within ten (10) business days after the issuance of the Final Order and Judgment by the Court finally approving the Settlement, the Parties and their Counsel shall jointly apply for orders dismissing with prejudice Plaintiffs' Released Claims and Defendants' Released Claims in the California State Action and the Nevada State Action, and shall use their reasonable best efforts to take, or cause to be taken, all actions, and to do, or cause to be done, all things reasonably necessary, proper and appropriate to secure dismissals with prejudice of the California State Action and Plaintiffs' Released Claims and Defendants' Released Claims in the Nevada State Action.

**4.    Releases**

4.1   Upon the Effective Date, Plaintiffs' Released Persons, RINO, and each of RINO's shareholders (solely in their capacity as RINO shareholders), including the California

14

Federal Plaintiffs, shall be deemed to have, and by operation of the Judgment shall have, fully, finally and forever released, relinquished and discharged as against Defendants' Released Persons any and all of Plaintiffs' Released Claims, and each of Plaintiffs' Released Persons, RINO, and each of RINO's shareholders (solely in their capacity as RINO shareholders) shall forever be barred and enjoined from instituting, commencing, or prosecuting any and all of Plaintiffs' Released Claims against any of Defendants' Released Persons.

4.2     Upon the Effective Date, Defendants' Released Persons shall be deemed to have, and by operation of the Judgment shall have, fully, finally and forever released, relinquished and discharged as against Plaintiffs' Released Persons, RINO, and all of RINO's shareholders (solely in their capacity as RINO shareholders) any and all of Defendants' Released Claims, and Defendants' Released Persons shall forever be barred and enjoined from instituting, commencing, or prosecuting any and all of Defendants' Released Claims against any of Plaintiffs' Released Persons, RINO, or any of RINO's shareholders (solely in their capacity as RINO shareholders).

4.3     Nothing herein shall in any way impair or restrict the rights of any Party to enforce the terms of the Stipulation.

**5.      Plaintiffs' Counsel's Unopposed Fee Award**

5.1     As a unitary part of the Settlement terms set forth herein and in recognition of the substantial benefits provided to RINO and Current RINO Shareholders by Plaintiffs' Counsel's efforts in initiating, prosecuting, and settling the Actions, RINO shall, subject to approval of the Court, cause to be paid to Plaintiffs' Counsel the Fee Award in the total amount of $475,000.

5.2     The Fee Award shall be transferred to Plaintiffs' Settlement Counsel, as receiving agents for Plaintiffs' Counsel, within twenty (20) business days after entry of the Preliminary Approval Order.

5.3     Payment of the Fee Award in the amount approved by the Court shall constitute final and complete payment for Plaintiffs' Counsel's attorneys' fees and expenses that have been incurred or will be incurred in connection with the filing and prosecution of Plaintiffs'

Released Claims and the resolution of such claims. Plaintiffs' Settlement Counsel shall be solely responsible for the distribution of the Fee Award to Plaintiffs' Counsel, however the allocation of the Fee Award amongst Plaintiffs' Counsel shall be made in accordance with the allocation determined by the Mediator. Defendants and Defendants' Counsel shall have no responsibility for the allocation or distribution of the Fee Award among Plaintiffs' Counsel. Defendants shall have no obligation to make any payment other than as provided herein to any Plaintiffs' Counsel.

5.4     Except as otherwise provided herein, each of the Parties shall bear his, her, or its own costs.

5.5     Each of the named Plaintiffs who are parties to this Stipulation may apply for a Court-approved incentive award in the amount of $2,000.00 (the "Incentive Awards"). The Incentive Awards shall be funded by the Fee Award, to the extent approved by the Court in whole or in part. Defendants shall take no position on the Incentive Awards.

5.6     This Settlement is in no way contingent upon the approval by the Court of the requested Fee Award or of any Incentive Award. RINO is only obligated to pay the amount of the Fee Award approved by the Court, if any, in any event not to exceed $475,000.

6.     **Conditions of Settlement and Effect of Disapproval, Cancellation, or Termination**

6.1     The Effective Date of the Stipulation shall be conditioned on the occurrence of all of the following events:

(a)     the Effective Date of the settlement in the California Federal Securities Class Action (which received preliminary approval on May 21, 2012) has occurred (as the term "Effective Date" is defined in the Stipulation of Settlement filed in that action);

(b)     the Court has entered the Final Order and Judgment;

(c)     the Fee Award, if any, has been approved by the Court and paid by RINO in accordance with ¶¶ 5.1-5.6 hereof; and

16

(d)   the Final Order and Judgment has become Final.

6.2    If any of the conditions specified in ¶ 6.1 are not met, including in the event that the pending settlement of the California Federal Securities Class Action is rejected or denied by the U.S. District Court for the Central District of California or terminated for any reason, then this Stipulation shall be cancelled, rendered void, have no further force or effect, and be terminated subject to ¶ 6.3, and the Parties shall be restored to their respective positions in the Actions as of the Execution Date of this Stipulation, unless Plaintiffs' Counsel and Defendants' Counsel mutually agree in writing to proceed with the Stipulation.

6.3    If for any reason the Effective Date of the Stipulation does not occur, or if the Stipulation is in any way canceled or terminated or if the Final Order and Judgment specified in ¶ 6.1(d) is successfully attacked collaterally, then the payments to Plaintiffs' Counsel pursuant to Section 5, and any and all interest accrued thereon since payment, shall be returned to RINO, its designee, and/or its successors within ten (10) business days of said event.  The return obligation set forth in this paragraph is the obligation of Plaintiffs' Settlement Counsel, which agrees to be subject to the jurisdiction of the Court for the purposes of enforcing this subparagraph.  Plaintiffs' Settlement Counsel reserves the right to seek contribution from other Plaintiffs' Counsel (and/or any other counsel that receives any portion of the Fee Award) for the purpose of enforcing this subparagraph, and all Plaintiffs' Counsel (and/or any other counsel) who receive any portion of the Fee Award shall subject themselves to the jurisdiction of the Court for enforcement of this subparagraph.

6.4    In the event that the Stipulation is not approved by the Court, or the Settlement is terminated for any reason, the Parties shall be restored to their respective positions as of the Execution Date of this Stipulation, and all negotiations, proceedings, documents prepared and statements made in connection herewith shall be without prejudice to the Parties, shall not be deemed or construed to be an admission by any of the Parties of any act, matter, or proposition, and shall not be used in any manner for any purpose in any subsequent proceeding in the Actions or in any other action or proceeding.  In such event, the terms and provisions of the

17

Stipulation, with the exception of ¶¶ 1.1-1.42, 6.2-6.4, 8.5, 8.7, 8.10, 8.11, and 8.12 herein, shall have no further force and effect with respect to the Parties and shall not be used in the Actions or in any other proceeding for any purpose, and any judgment or orders entered by the Court in accordance with the terms of the Stipulation shall be treated as vacated, *nunc pro tunc*.

7.      **Bankruptcy**

7.1     In the event any proceedings by or on behalf of RINO, whether voluntary or involuntary, are initiated under any chapter of the United States Bankruptcy Code, including any act of receivership, asset seizure, or similar federal or state law action ("Bankruptcy Proceedings"), the Parties agree to use their reasonable best efforts to obtain all necessary orders, consents, releases, and approvals for effectuation of this Stipulation in a timely and expeditious manner.

7.2     In the event of any Bankruptcy Proceedings by or on behalf of RINO, the Parties agree that all dates and deadlines set forth herein will be extended for such periods of time as are required to obtain necessary orders, consents, releases and approvals from the Bankruptcy Court to carry out the terms and conditions of the Stipulation.

8.      **Miscellaneous Provisions**

8.1     It is the understanding and the intent of the Parties that one or both of the California Houses will be sold and the proceeds from the sale of one or both of the California Houses will be transferred, in whole or in part, to RINO to fund a portion of the settlement of the California Federal Securities Class Action.  However, Plaintiffs, Plaintiffs' Counsel and RINO shall have no claim to the California Houses or to any proceeds from the sale thereof, unless and except as separately agreed to in writing, beyond their claim to the Settlement and Fee Award provided by this Stipulation.

8.2     The Parties: (i) acknowledge that it is their intent to consummate this Stipulation; and (ii) agree to cooperate to the extent reasonably necessary to effectuate and implement all terms and conditions of the Stipulation and to exercise their best efforts to accomplish the foregoing terms and conditions of the Stipulation.

18

8.3     The Parties agree that the terms of the Settlement were negotiated in good faith by the Parties, and reflect a settlement that was reached voluntarily after consultation with competent legal counsel.  The Parties will request that the Final Order and Judgment in the Actions will contain a finding that, during the course of the Actions, the Parties and their respective counsel at all times complied with the requirements of Rule 11 of the Federal Rules of Civil Procedure and all other similar federal and/or state rules of professional conduct.  The Parties reserve their right to rebut, in a manner that such party determines to be appropriate, any contention made in any public forum that the Actions were brought or defended in bad faith or without a reasonable basis.

8.4     In the event that any part of the Settlement is found to be unlawful, void, unconscionable, or against public policy by a court of competent jurisdiction, the remaining terms and conditions of the settlement shall remain intact.

8.5     Neither the Stipulation (including any exhibits attached hereto) nor the Settlement, nor any act performed or document executed pursuant to or in furtherance of the Stipulation or the Settlement: (i) is or may be deemed to be or may be offered, attempted to be offered or used in any way by the Parties as a presumption, a concession or an admission of, or evidence of, the validity of any of Plaintiffs' Released Claims, or of any fault, wrongdoing or liability of any of the Parties, Plaintiffs' Counsel, Defendants' Counsel, Defendants' Released Persons or Plaintiffs' Released Persons; or (ii) is or may be deemed to be or may be offered, attempted to be offered or used in any way by the Parties as a presumption, a concession or an admission of, or evidence of, any fault, omission, wrongdoing or liability of any of the Parties, Plaintiffs' Counsel, Defendants' Counsel, Defendants' Released Persons or Plaintiffs' Released Persons in any civil, criminal, or administrative proceeding in any court, administrative agency, or other tribunal.  The Parties, Plaintiffs' Counsel, Defendants' Counsel, Defendants' Released Persons and Plaintiffs' Released Persons may file the Stipulation and/or the Final Order and Judgment in any action that has been or may be brought against them (including but not limited to the California Federal Action) in order to support a defense or counterclaim based on

19

principles of *res judicata*, collateral estoppel, release, good-faith settlement, judgment bar or reduction, or any other theory of claim preclusion or issue preclusion or similar defense or counterclaim.

8.6    The exhibits to the Stipulation are material and integral parts hereof and are fully incorporated herein by this reference.

8.7    The Stipulation may be amended or modified only by a written instrument signed by or on behalf of all Parties or their respective successors-in-interest.

8.8    The Stipulation and the exhibits attached hereto represent the complete and final resolution of all disputes among the Parties with respect to the Actions, constitute the entire agreement among the Parties, and supersede any and all prior negotiations, discussions, agreements, or undertakings, whether oral or written, with respect to such matters.

8.9    The Stipulation shall be deemed drafted equally by all Parties hereto.

8.10    The Stipulation and the Settlement contemplated by it shall be governed by, and construed in accordance with, the laws of the State of Nevada, without regard to Nevada's conflict of law rules.

8.11    The Parties agree that this Stipulation will run to their respective successors-in-interest and assigns, and they further agree that any planned, proposed or actual sale, merger or change-in-control of RINO shall not void this Stipulation, and that in the event of a planned, proposed or actual sale, merger or change-in-control of RINO they will continue to seek final approval of this Stipulation expeditiously, including but not limited to the settlement terms reflected in this Stipulation and the Fee Award (as defined herein) and that RINO acknowledges and agrees that the Company will receive adequate consideration supporting the Court's approval of the Fee Award.

8.12    Each counsel or other Person executing the Stipulation or its exhibits on behalf of any of the Parties hereby warrants that such Person has the full authority to do so.  The Stipulation shall be binding upon, and inure to the benefit of, the successors and assigns of the Parties, Plaintiffs' Released Persons, and Defendants' Released Persons.

8.13     The Stipulation may be executed by facsimile or electronically (in .pdf format) and in one or more counterparts.  All executed counterparts and each of them shall be deemed to be one and the same instrument.  A complete set of original executed counterparts shall be filed with the Court.

IN  WITNESS  WHEREOF,  the  Parties  hereto  have  caused  the  Stipulation  to  be executed, by their duly authorized attorneys, dated as of November 28, 2012.

21

DATED: November **28**, 2012

THE WEISER LAW FIRM, P.C.
ROBERT B. WEISER
BRETT D. STECKER
JEFFREY J. CIARLANTO

_Robert B Weiss /JJC_

ROBERT B. WEISER

22 Cassatt Avenue
First Floor
Berwyn, PA 19312
Telephone:  (610) 225-2677
Facsimile: (610) 408-8062

DATED: November ___, 2012

THE SHUMAN LAW FIRM
KIP B. SHUMAN
RUSTY E. GLENN

KIP SHUMAN

885 Arapahoe Avenue
Boulder, CO 80302
Telephone: (303) 861-3003
Facsimile: (303) 484-4886

DATED: November ___, 2012

ALDRICH LAW FIRM, LTD
JOHN P. ALDRICH

JOHN P. ALDRICH

1601 S. Rainbow Blvd., Suite 160
Las Vegas, NV 89146
Telephone: (702) 853-5490
Facsimile: (702) 227-1975

DATED: November ___, 2012

HARWOOD FEFFER LLP
ROBERT I. HARWOOD

22

DATED: November __, 2012

THE WEISER LAW FIRM, P.C.
ROBERT B. WEISER
BRETT D. STECKER
JEFFREY J. CIARLANTO

_____
ROBERT B. WEISER

22 Cassatt Avenue
First Floor
Berwyn, PA 19312
Telephone: (610) 225-2677
Facsimile: (610) 408-8062

DATED: November 28, 2012

THE SHUMAN LAW FIRM
KIP B. SHUMAN
RUSTY E. GLENN

_____
KIP SHUMAN

885 Arapahoe Avenue
Boulder, CO 80302
Telephone: (303) 861-3003
Facsimile: (303) 484-4886

DATED: November __, 2012

ALDRICH LAW FIRM, LTD
JOHN P. ALDRICH

_____
JOHN P. ALDRICH

1601 S. Rainbow Blvd., Suite 160
Las Vegas, NV 89146
Telephone: (702) 853-5490
Facsimile: (702) 227-1975

DATED: November __, 2012

HARWOOD FEFFER LLP
ROBERT I. HARWOOD

22

1
2  DATED:  November __, 2012          THE WEISER LAW FIRM, P.C.
                                     ROBERT B. WEISER
3                                    BRETT D. STECKER
                                     JEFFREY J. CIARLANTO
4

5                                    _____
                                               ROBERT B. WEISER
6
                                     22 Cassatt Avenue
7                                    First Floor
                                     Berwyn, PA 19312
8                                    Telephone:  (610) 225-2677
                                     Facsimile: (610) 408-8062
9

10

11 DATED:  November __, 2012          THE SHUMAN LAW FIRM
                                     KIP B. SHUMAN
12                                   RUSTY E. GLENN

13

14                                   _____
                                               KIP SHUMAN
15
                                     885 Arapahoe Avenue
16                                   Boulder, CO 80302
                                     Telephone: (303) 861-3003
17                                   Facsimile: (303) 484-4886

18

19 DATED:  November 28, 2012          ALDRICH LAW FIRM, LTD
                                     JOHN P. ALDRICH
20

21                                   _____
                                               JOHN P. ALDRICH
22
                                     1601 S. Rainbow Blvd., Suite 160
23                                   Las Vegas, NV 89146
                                     Telephone: (702) 853-5490
24                                   Facsimile: (702) 227-1975

25

26 DATED:  November __, 2012          HARWOOD FEFFER LLP
                                     ROBERT I. HARWOOD
27

28                                   _____

                                     22

DATED: November __, 2012

THE WEISER LAW FIRM, P.C.
ROBERT B. WEISER
BRETT D. STECKER
JEFFREY J. CIARLANTO

_____
ROBERT B. WEISER

22 Cassatt Avenue
First Floor
Berwyn, PA 19312
Telephone: (610) 225-2677
Facsimile: (610) 408-8062

DATED: November __, 2012

THE SHUMAN LAW FIRM
KIP B. SHUMAN
RUSTY E. GLENN

_____
KIP SHUMAN

885 Arapahoe Avenue
Boulder, CO 80302
Telephone: (303) 861-3003
Facsimile: (303) 484-4886

DATED: November __, 2012

ALDRICH LAW FIRM, LTD
JOHN P. ALDRICH

_____
JOHN P. ALDRICH

1601 S. Rainbow Blvd., Suite 160
Las Vegas, NV 89146
Telephone: (702) 853-5490
Facsimile: (702) 227-1975

DATED: November 28, 2012

HARWOOD FEFFER LLP
ROBERT I. HARWOOD

_____

22

1        ROBERT I. HARWOOD

2      488 Madison Avenue, 8th Floor
       New York, NY 10022
3      Telephone: (212) 935-7400
       Facsimile: (212) 753-3630

4

5

6 DATED: November 28, 2012   HULETT, HARPER & STEWART, LLP
       BLAKE MUIR HARPER
7

8

9        BLAKE MUIR HARPER

10      225 Broadway #1350
       San Diego, CA 92101
11      Telephone: (619) 338-1133
       Facsimile: (619) 338-1139
12

13

14 DATED: November ___, 2012  THE O'MARA LAW FIRM, P.C.
       DAVID C. O'MARA
15

16

17        DAVID C. O'MARA

18      311 E. Liberty Street
       Reno, NV 89501
19      Telephone: (775) 323-1321
       Facsimile: (775) 323-4082
20

21 DATED: November ___, 2012  BOTTINI & BOTTINI, INC.
       FRANCIS A. BOTTINI, JR.
22

23

24        FRANCIS A. BOTTINI, JR.

25      7817 Ivanhoe Ave., Suite 120
       La Jolla, CA 92037
26      Telephone: (858) 914-2001
       Facsimile: (858) 914-2002
27

28      *Plaintiffs' Counsel*

        23

ROBERT I. HARWOOD

488 Madison Avenue, 8th Floor
New York, NY 10022
Telephone: (212) 935-7400
Facsimile: (212) 753-3630

DATED:  November __, 2012          HULETT, HARPER & STEWART, LLP
                                   BLAKE MUIR HARPER


BLAKE MUIR HARPER

225 Broadway #1350
San Diego, CA 92101
Telephone: (619) 338-1133
Facsimile: (619) 338-1139

DATED:  November 29, 2012          THE O'MARA LAW FIRM, P.C.
                                   DAVID C. O'MARA

                                   _David C. O'Mara_
                                   DAVID C. O'MARA

311 E. Liberty Street
Reno, NV 89501
Telephone: (775) 323-1321
Facsimile: (775) 323-4082

DATED:  November __, 2012          BOTTINI & BOTTINI, INC.
                                   FRANCIS A. BOTTINI, JR.


FRANCIS A. BOTTINI, JR.

7817 Ivanhoe Ave., Suite 120
La Jolla, CA 92037
Telephone: (858) 914-2001
Facsimile: (858) 914-2002

*Plaintiffs' Counsel*

23

ROBERT I. HARWOOD

488 Madison Avenue, 8th Floor
New York, NY 10022
Telephone: (212) 935-7400
Facsimile: (212) 753-3630

DATED:  November __, 2012

HULETT, HARPER & STEWART, LLP
BLAKE MUIR HARPER

BLAKE MUIR HARPER

225 Broadway #1350
San Diego, CA 92101
Telephone: (619) 338-1133
Facsimile: (619) 338-1139

DATED:  November __, 2012

THE O'MARA LAW FIRM, P.C.
DAVID C. O'MARA

DAVID C. O'MARA

311 E. Liberty Street
Reno, NV 89501
Telephone: (775) 323-1321
Facsimile: (775) 323-4082

DATED:  November 26, 2012

BOTTINI & BOTTINI, INC.
FRANCIS A. BOTTINI, JR.

FRANCIS A. BOTTINI, JR.

7817 Ivanhoe Ave., Suite 120
La Jolla, CA 92037
Telephone: (858) 914-2001
Facsimile: (858) 914-2002

*Plaintiffs' Counsel*

23

DATED:  November 28 2012

SHEARMAN & STERLING LLP
PATRICK D. ROBBINS
EMILY V. GRIFFEN
JIYOUN CHUNG

_____
PATRICK D. ROBBINS

Four Embarcadero Center, Suite 3800
San Francisco, CA 94111-5994
Telephone: (415) 616-1100
Facsimile: (415) 616-1199

DATED:  November ___, 2012

SNELL & WILMER LLP
PATRICK G. BYRNE (State Bar No. 7636)
RICHARD C. GORDON (State Bar No. 9036)

_____
PATRICK G. BYRNE

Hughes Center
3883 Howard Hughes Parkway, Suite 1100
Las Vegas, NV 89169-5958
Telephone: (702) 784-5200
Facsimile: (702) 784-5252

DATED:  November ___, 2012

DAVIS POLK & WARDWELL LLP
NEAL A. POTISCHMAN
MICHAEL R. PETROCELLI

_____
NEAL A. POTISCHMAN

1600 El Camino Real
Menlo Park, CA 94025
Telephone: (650) 752-2000
Facsimile: (650) 752-2111

24

DATED: November ___, 2012

SHEARMAN & STERLING LLP
PATRICK D. ROBBINS
EMILY V. GRIFFEN
JIYOUN CHUNG

_____
PATRICK D. ROBBINS

Four Embarcadero Center, Suite 3800
San Francisco, CA 94111-5994
Telephone: (415) 616-1100
Facsimile: (415) 616-1199

DATED: November ___, 2012

SNELL & WILMER LLP
PATRICK G. BYRNE (State Bar No. 7636)
RICHARD C. GORDON (State Bar No. 9036)

_____
PATRICK G. BYRNE

Hughes Center
3883 Howard Hughes Parkway, Suite 1100
Las Vegas, NV 89169-5958
Telephone: (702) 784-5200
Facsimile: (702) 784-5252

DATED: November ___, 2012

DAVIS POLK & WARDWELL LLP
NEAL A. POTISCHMAN
MICHAEL R. PETROCELLI

_____
NEAL A. POTISCHMAN

1600 El Camino Real
Menlo Park, CA 94025
Telephone: (650) 752-2000
Facsimile: (650) 752-2111

24

DATED:  November __, 2012

SHEARMAN & STERLING LLP
PATRICK D. ROBBINS
EMILY V. GRIFFEN
JIYOUN CHUNG

_____
PATRICK D. ROBBINS

Four Embarcadero Center, Suite 3800
San Francisco, CA 94111-5994
Telephone: (415) 616-1100
Facsimile: (415) 616-1199

DATED:  November __, 2012

SNELL & WILMER LLP
PATRICK G. BYRNE (State Bar No. 7636)
RICHARD C. GORDON (State Bar No. 9036)

_____
PATRICK G. BYRNE

Hughes Center
3883 Howard Hughes Parkway, Suite 1100
Las Vegas, NV 89169-5958
Telephone: (702) 784-5200
Facsimile: (702) 784-5252

DATED:  November 28, 2012

DAVIS POLK & WARDWELL LLP
NEAL A. POTISCHMAN
MICHAEL R. PETROCELLI

_____
NEAL A. POTISCHMAN /mrp

1600 El Camino Real
Menlo Park, CA 94025
Telephone: (650) 752-2000
Facsimile: (650) 752-2111

24

DATED:  November 28, 2012

COOLEY LLP
JOHN C. DWYER
JESSICA VALENZUELA SANTAMARIA
ADAM C. TRIGG

*Jessica Val Sant*

JESSICA VALENZUELA SANTAMARIA

Five Palo Alto Square
3000  El Camino Real
Palo Alto, CA 94306-2155
Telephone: (650) 843-5000
Facsimile: (650) 849-7400

DATED:  November ___, 2012

BALLARD SPAHR LLP
ABRAN E. VIGIL (State Bar No. 7548)

ABRAN E. VIGIL

100 North City Parkway
Suite 1750
Las Vegas, NV 89106
Telephone: (702) 471-7000
Facsimile: (702) 471-7070

GORDON SILVER
MICHAEL N. FEDER (State Bar No. 7332)

MICHAEL N. FEDER

3960 Howard Hughes Parkway, 9th Floor
Las Vegas, NV 89169
Telephone:  (702) 796-5555
Facsimile:  (702) 369-2666

*Defendants' Counsel*

25

DATED: November __, 2012

COOLEY LLP
JOHN C. DWYER
JESSICA VALENZUELA SANTAMARIA
ADAM C. TRIGG

_____
JESSICA VALENZUELA SANTAMARIA

Five Palo Alto Square
3000 El Camino Real
Palo Alto, CA 94306-2155
Telephone: (650) 843-5000
Facsimile: (650) 849-7400

DATED: November 28, 2012

BALLARD SPAHR LLP
ABRAN E. VIGIL (State Bar No. 7548)

_____
ABRAN E. VIGIL

100 North City Parkway
Suite 1750
Las Vegas, NV 89106
Telephone: (702) 471-7000
Facsimile: (702) 471-7070

GORDON SILVER
MICHAEL N. FEDER (State Bar No. 7332)

_____
MICHAEL N. FEDER

3960 Howard Hughes Parkway, 9th Floor
Las Vegas, NV 89169
Telephone: (702) 796-5555
Facsimile: (702) 369-2666

*Defendants' Counsel*

25

DATED: November ___, 2012

COOLEY LLP
JOHN C. DWYER
JESSICA VALENZUELA SANTAMARIA
ADAM C. TRIGG

_____
JESSICA VALENZUELA SANTAMARIA

Five Palo Alto Square
3000  El Camino Real
Palo Alto, CA 94306-2155
Telephone: (650) 843-5000
Facsimile: (650) 849-7400

DATED: November ___, 2012

BALLARD SPAHR LLP
ABRAN E. VIGIL (State Bar No. 7548)

_____
ABRAN E. VIGIL

100 North City Parkway
Suite 1750
Las Vegas, NV 89106
Telephone: (702) 471-7000
Facsimile: (702) 471-7070

GORDON SILVER
MICHAEL N. FEDER (State Bar No. 7332)

_____
MICHAEL N. FEDER

DATED: November 28, 2012

3960 Howard Hughes Parkway, 9th Floor
Las Vegas, NV 89169
Telephone:  (702) 796-5555
Facsimile:  (702) 369-2666

*Defendants' Counsel*

25

# Exhibit A

John P. Aldrich, Esq.
Nevada State Bar No.: 6877
**ALDRICH LAW FIRM, LTD**
1601 S. Rainbow Blvd., Suite 160
Las Vegas, Nevada 89146
(702) 853-5490

Kip B. Shuman, Esq.
Rusty E. Glenn, Esq.
**THE SHUMAN LAW FIRM**
885 Arapahoe Avenue
Boulder, CO 80302
(303) 861-3003
(303) 484-4886 (fax)

## UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEVADA

| | |
|---|---|
| IN RE RINO INTERNATIONAL CORPORATION DERIVATIVE LITIGATION | Lead Case No. 2:10-cv-02209-MMD-GWF (Consolidated with case no. 2:10-cv-02244-KJD-DWF) |
| This Document Relates To: | |
| ALL ACTIONS | |

## [PROPOSED] FINAL ORDER AND JUDGMENT

This matter came before the Court for hearing pursuant to the Court's Order Preliminarily Approving Derivative Settlement and Providing for Notice, dated _____ (the "Preliminary Approval Order"), on the application of the Parties for final approval of the settlement set forth in the Stipulation and Agreement of Settlement dated November 28, 2012 (the "Stipulation"). Due and adequate notice having been given to Current RINO Shareholders as required in said Preliminary Approval Order, and the Court having considered all papers filed and proceedings had herein and otherwise being fully informed in the premises and good cause appearing therefore, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED that:

1.      This Final Order and Judgment incorporates by reference the definitions in the Stipulation, and all capitalized terms used herein shall have the same meanings as set forth in the Stipulation.

2.      This Court has jurisdiction over the subject matter of the Nevada Federal Action, including all matters necessary to effectuate the Settlement, and over all Parties.

3.      The Court finds that the Settlement set forth in the Stipulation is fair, reasonable, and adequate as to each of the Parties, and hereby finally approves the Settlement in all respects, finds that the Settlement set forth in the Stipulation provides substantial benefits to RINO and Current RINO Shareholders, and orders the Parties to perform its terms to the extent the Parties have not already done so.

4.      The Nevada Federal Action, all claims contained therein, and Plaintiffs' Released Claims are hereby ordered as compromised, settled, released, discharged and dismissed on the merits and with prejudice by virtue of the proceedings herein and this Final Order and Judgment. As among Plaintiffs, RINO, and the Individual Defendants, the Parties are to bear their own costs, except as otherwise provided in the Stipulation.

5.      Plaintiffs, Plaintiffs' Released Persons, and Current RINO Shareholders are forever enjoined and permanently barred from instituting, commencing or prosecuting against Defendants and/or Defendants' Released Persons any of Plaintiffs' Released Claims and as well as any claims arising out of, relating to or in connection with the institution, prosecution, assertion, defense, settlement, or resolution of the Nevada Federal Action.

6.      Defendants and Defendants' Released Persons are forever enjoined and permanently barred from instituting, commencing or prosecuting against Plaintiffs and/or Plaintiffs' Released Persons any of Defendants' Released Claims as well as any claims arising

out of, relating to, or in connection with the institution, prosecution, assertion, defense, settlement, or resolution of the Nevada Federal Action.

7.      Upon the Effective Date, Plaintiffs' Released Persons, RINO, and each of RINO's shareholders (solely in their capacity as RINO shareholders), including the California Federal Plaintiffs, shall be deemed to have, and by operation of the Final Order and Judgment shall have, fully, finally and forever released, relinquished and discharged as against Defendants' Released Persons any and all of Plaintiffs' Released Claims, and each of Plaintiffs' Released Persons, RINO, and each of RINO's shareholders (solely in their capacity as RINO shareholders) shall forever be barred and enjoined from instituting, commencing, or prosecuting any and all of Plaintiffs' Released Claims against any of Defendants' Released Persons.

8.      Upon the Effective Date, Defendants' Released Persons shall be deemed to have, and by operation of the Judgment shall have, fully, finally and forever released, relinquished and discharged as against Plaintiffs' Released Persons, RINO, and all of RINO's shareholders (solely in their capacity as RINO shareholders) any and all of Defendants' Released Claims, and Defendants' Released Persons shall forever be barred and enjoined from instituting, commencing, or prosecuting any and all of Defendants' Released Claims against any of Plaintiffs' Released Persons, RINO, or any of RINO's shareholders (solely in their capacity as RINO shareholders).

9.      The Court finds that the Notice to Current RINO Shareholders, published in the *Investor's Business Daily*, provided the best notice practicable under the circumstances of these proceedings and of the matters set forth therein, including the Settlement set forth in the Stipulation, to all Persons entitled to such notice, and said Notice fully satisfied the requirements of Federal Rule of Civil Procedure 23.1 and the requirements of due process.

10.     Within ten (10) business days following the entry of this Final Order and Judgment, the Parties will jointly apply to have the California State Action and Nevada State Action dismissed with prejudice.

11.     The Court finds that during the course of the Nevada Federal Action, the Parties and their counsel at all times complied with Federal Rule of Civil Procedure 11.

12.     The Court finds that the Fee Award and Incentive Awards are fair and reasonable, in accordance with the Stipulation, and finally approves the Fee Award and Incentive Awards.

13.     Neither the Stipulation (including any exhibits attached hereto) nor the Settlement, nor any act performed or document executed pursuant to or in furtherance of the Stipulation or the Settlement: (i) is or may be deemed to be or may be offered, attempted to be offered or used in any way by the Parties as a presumption, a concession or an admission of, or evidence of, the validity of any of Plaintiffs' Released Claims, or of any fault, wrongdoing or liability of any of the Parties, Plaintiffs' Counsel, Defendants' Counsel, Defendants' Released Persons or Plaintiffs' Released Persons; or (ii) is or may be deemed to be or may be offered, attempted to be offered or used in any way by the Parties as a presumption, a concession or an admission of, or evidence of, any fault, omission, wrongdoing or liability of any of the Parties, Plaintiffs' Counsel, Defendants' Counsel, Defendants' Released Persons or Plaintiffs' Released Persons in any civil, criminal, or administrative proceeding in any court, administrative agency, or other tribunal.  The Parties, Plaintiffs' Counsel, Defendants' Counsel, Defendants' Released Persons and Plaintiffs' Released Persons may file the Stipulation and/or the Final Order and Judgment in any action that has been or may be brought against them (including but not limited to the California Federal Action) in order to support a defense or counterclaim based on principles of *res judicata*, collateral estoppel, release, good-faith settlement, judgment bar or

reduction, or any other theory of claim preclusion or issue preclusion or similar defense or counterclaim.

14.     Without affecting the finality of this Final Order and Judgment in any way, this Court hereby retains continuing jurisdiction over: (a) implementation of the Settlement; and (b) the Parties for the purpose of construing, enforcing, and administering the Stipulation, including, if necessary, setting aside and vacating this Final Order and Judgment, on motion of a Party, to the extent consistent with and in accordance with the Stipulation if the Effective Date fails to occur in accordance with the Stipulation.

15.     This Final Order and Judgment is a final, appealable judgment and should be entered forthwith by the Clerk in accordance with Federal Rule of Civil Procedure 58.

IT IS SO ORDERED.

DATED:_____          _____

HONORABLE MIRANDA M. DU

UNITED STATES DISTRICT JUDGE

# Exhibit B

John P. Aldrich, Esq.
Nevada State Bar No.: 6877
**ALDRICH LAW FIRM, LTD**
1601 S. Rainbow Blvd., Suite 160
Las Vegas, Nevada 89146
(702) 853-5490

Kip B. Shuman, Esq.
Rusty E. Glenn, Esq.
**THE SHUMAN LAW FIRM**
885 Arapahoe Avenue
Boulder, CO 80302
(303) 861-3003
(303) 484-4886 (fax)

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEVADA

| | |
|---|---|
| IN RE RINO INTERNATIONAL CORPORATION DERIVATIVE LITIGATION | ) ) ) ) ) ) ) ) ) ) |
| This Document Relates To: | |
| ALL ACTIONS | |

Lead Case No. 2:10-cv-02209-MMD-GWF
(Consolidated with case no. 2:10-cv-02244-KJD-DWF)

**NOTICE TO CURRENT RINO SHAREHOLDERS**

TO:   ALL OWNERS OF RINO INTERNATIONAL CORPORATION ("RINO" OR "THE COMPANY") COMMON STOCK AS OF NOVEMBER 28, 2012 ("CURRENT RINO SHAREHOLDERS").

PLEASE READ THIS NOTICE CAREFULLY AND IN ITS ENTIRETY. YOUR RIGHTS MAY BE AFFECTED. THIS NOTICE RELATES TO A PROPOSED SETTLEMENT AND DISMISSAL OF SHAREHOLDER DERIVATIVE LITIGATION AND CONTAINS IMPORTANT INFORMATION REGARDING YOUR RIGHTS. YOUR RIGHTS MAY BE AFFECTED BY LEGAL PROCEEDINGS IN THESE ACTIONS.

IF THE COURT APPROVES THE SETTLEMENT AND DISMISSAL OF THE NEVADA FEDERAL ACTION, SHAREHOLDERS OF RINO WILL BE FOREVER BARRED FROM CONTESTING THE APPROVAL OF THE PROPOSED SETTLEMENT AND FROM PURSUING THE SETTLED CLAIMS. THESE ACTIONS ARE NOT "CLASS ACTIONS." THUS, THERE IS NO

1

COMMON FUND UPON WHICH YOU CAN MAKE A CLAIM FOR A MONETARY PAYMENT.

THE COURT HAS MADE NO FINDINGS OR DETERMINATIONS RESPECTING THE MERITS OF THE NEVADA FEDERAL ACTION.  THE RECITATION OF THE BACKGROUND AND CIRCUMSTANCES OF THE SETTLEMENT CONTAINED HEREIN DOES NOT CONSTITUTE THE FINDINGS OF THE COURT.  IT IS BASED ON REPRESENTATIONS MADE TO THE COURT BY COUNSEL FOR THE PARTIES.

IF YOU WERE NOT THE BENEFICIAL OWNER OF RINO COMMON STOCK ON THE RECORD DATE, PLEASE TRANSMIT THIS DOCUMENT TO SUCH BENEFICIAL OWNER.

YOU ARE HEREBY NOTIFIED, pursuant to Federal Rule of Civil Procedure 23.1 and an Order of the U.S. District Court for the District of Nevada (the "Court"), that a proposed settlement agreement (the "Settlement") has been reached among Plaintiffs,[1] on behalf of themselves and derivatively on behalf of RINO, Individual Defendants, and RINO in connection with the consolidated shareholder derivative actions entitled *In re RINO International Corporation Derivative Litigation,* Lead Case No. 2:10-cv-02209-MMD-GWF, pending before the Court (the "Nevada Federal Action"), *In re RINO International Corp. Derivative Action,* Case No. 10-OC-005291 B, Dept. No. I, filed in the First Judicial District Court of the State of Nevada in and for Carson City (the "Nevada State Action"), and *In re RINO International Corporation Shareholder Derivative Litigation*, Case No. 30-2010-00431481-CU-SL-CXC, filed in the Superior Court for the State of California for the County of Orange (the "California State Action" and together with the Nevada Federal Action and the Nevada State Action, the "Actions").

---

[1] For purposes of this Notice, the Court incorporates by reference the definitions in the Parties' Stipulation and Agreement of Settlement ("Stipulation") dated as of November 28, 2012, and all capitalized terms used herein, unless otherwise defined, shall have the same meanings as set forth in the Stipulation.  A copy of the Stipulation may be inspected at the Clerk of the Court's Office for the U.S. District Court for the District of Nevada, Lloyd D. George U.S. Courthouse, 333 Las Vegas Blvd South, Las Vegas, NV 89101.

Plaintiffs filed the Actions derivatively on behalf of RINO to remedy the alleged harm caused to the Company by the Individual Defendants' alleged breach of their fiduciary duties. The proposed Settlement, if approved by the Court, would fully, finally and forever resolve the Actions on the terms set forth in the Stipulation and summarized in this Notice, including the dismissal of the Actions with prejudice.

As explained below, a hearing (the "Settlement Hearing") shall be held before this Court on _____, 2012 at _____ __. m. to determine whether, *inter alia*, the proposed Settlement is fair, reasonable, and adequate, and should be finally approved by the Court. You have the right to object to the Settlement in the manner provided herein. If you fail to object in the manner provided herein *at least fourteen (14) business days prior to the Settlement Hearing*, you will be deemed to have waived your objections and will be bound by the Final Order and Judgment to be entered and the releases to be given, unless otherwise ordered by the Court.

This Notice is not intended to be and should not be construed as an expression of any opinion by the Court with respect to the merits of the claims made in the Actions, but is merely to advise you of the proposed Settlement and of your rights as a Current RINO Shareholder.

## I.   BACKGROUND

According to the complaint in the Nevada Federal Action, RINO, through its subsidiaries, operates as an environmental protection and remediation company in the People's Republic of China. The Nevada Federal Action alleges that the Company engages in designing, manufacturing, installing, and servicing wastewater treatment and flue gas desulphurization ("FGD") equipment primarily for use in the iron and steel industry, and anti-oxidation products and equipment for use in the manufacture of hot rolled steel plate products. The Nevada Federal Action alleges that prior to the Company's announced restatement of its U.S.-reported

financial results, Defendants had allegedly represented that FGD sales and service historically accounted for approximately 65-70% of RINO's U.S.-reported revenues.

On November 23, 2010, the Nevada State Action was initiated with the filing of the first of two cases which were subsequently consolidated into the Nevada State Action. The Nevada State Action named certain parties as additional defendants who were not named in the Nevada Federal Action, including Moore Stephens Wurth Frazer & Torbet LLP and Frazer Frost LLP (the "Auditor Defendants"). Then, on December 8, 2010, the first of two actions were filed which eventually became the California State Action. Next, on December 20, 2010, the first of two actions were filed which became the Nevada Federal Action. Finally, on January 21, 2011, an additional shareholder derivative action was filed in the U.S. District Court for the Central District of California (the "California Federal Action"). The California Federal Action is not included in the Settlement, although the claims made in that action are based on allegations that are substantively identical to those asserted in each of the Actions.

On March 4, 2011, a Verified Consolidated Shareholder Derivative Complaint was filed in the Court and ultimately became the litigated pleading in the Nevada Federal Action.

The Actions are brought on RINO's behalf and allege violations of state and/or federal law relating to three central issues. Specifically, the Actions allege that: (i) RINO's Board of Directors (the "Board") permitted and/or approved the booking of material amounts of revenue from third parties that were not in fact RINO's "customers," as they were represented to be; (ii) the Board approved an interest-free loan to Dejun Zou and Jianping Qiu (RINO's co-founders) to purchase the California Houses on the same day that RINO raised $100 million from a secondary public offering; and (iii) the Board signed and filed financial results with the U.S. Securities Exchange Commission (the "SEC") which were materially different from those filed with China's State Administration for Industry and Commerce (the "SAIC").

On March 14, 2011, Defendants RINO and Johnson moved to dismiss and/or stay the Nevada Federal Action, which was timely opposed on April 29, 2011.[2] On November 2, 2011, this Court granted Defendants' motions to dismiss the Nevada Federal Action without prejudice and with leave to amend (the "Dismissal Order").

In response to the Dismissal Order, on December 1, 2011, plaintiffs in the Nevada Federal Action filed a Motion for Leave to file an Amended Consolidated Complaint (the "Motion to Amend") and attached the proposed Amended Consolidated Complaint (the "Amended Complaint"), which purported to cure the prior defects that formed the basis of the Dismissal Order. This Court granted the Nevada Federal Plaintiffs' Motion to Amend and permitted the filing of the Amended Complaint on January 20, 2012.

Settlement discussions related to the Actions occurred intermittently throughout 2011, and while the Parties made some progress, no settlement was reached. By early 2012, however, settlement discussions had progressed substantially to the point where Plaintiffs' Counsel and Defendants' Counsel jointly agreed to extensions of time for Defendants to respond to the Amended Complaint in the hope that a settlement would be reached and the time and expense of further litigation could be avoided. Subsequently, after a series of extensive discussions and arm's-length negotiations, conducted with the personal aid and involvement of the Hon. Daniel Weinstein (Ret.) and Liz Hasse (collectively, the "Mediator"), professional and experienced mediators, on April 4, 2012, the Parties agreed in principle to the terms required to settle the Actions.

---

[2] Defendant Zhang, who was not served until April 12, 2011, also filed a motion to dismiss in the Nevada Federal Action on May 23, 2011 which was also opposed.

## II. PLAINTIFFS' COUNSEL'S INVESTIGATION AND RESEARCH, PLAINTIFFS' CLAIMS AND THE BENEFITS OF SETTLEMENT

Plaintiffs' Counsel have conducted an extensive investigation relating to the claims and the underlying events alleged in the Actions including, but not limited to: (1) inspecting, analyzing, and reviewing RINO's public filings with the U.S. Securities and Exchange Commission ("SEC"), press releases, announcements, transcripts of investor conference calls, and news articles; (2) drafting and filing the various complaints in the Actions, including multiple detailed consolidated complaints; (3) researching the applicable law with respect to the claims asserted in the Actions and the potential defenses thereto; (4) researching corporate governance issues; and (5) exchanging certain information and participating in extensive, in-person settlement discussions with Defendants' Counsel and the Mediator. Plaintiffs' Counsel believe that the claims asserted in the Actions have merit and that their investigation supports the claims asserted.

Without conceding the merit of any of Defendants' defenses or the lack of merit of any of their own allegations, and solely in order to avoid the potentially protracted time, expense, and uncertainty associated with continued litigation, including potential trial(s) and appeals, Plaintiffs have concluded that it is desirable that the Actions be fully and finally settled in the manner and upon the terms and conditions set forth in the Stipulation. Plaintiffs and Plaintiffs' Counsel recognize the significant risk, expense, and length of continued proceedings necessary to prosecute the Actions against the Defendants through trial(s) and possible appeals. Plaintiffs' Counsel also have taken into account the uncertain outcome and the risk of any litigation, especially in complex cases such as the Actions, as well as the difficulties and delays inherent in such litigation. Based on their evaluation, Plaintiffs and Plaintiffs' Counsel have determined that the Settlement is in the best interests of Plaintiffs, RINO, and Current RINO Shareholders, and

have accordingly agreed to settle the Actions upon the terms and subject to the conditions set forth herein.

### III. DEFENDANTS' DENIALS OF WRONGDOING AND LIABILITY

The Defendants have denied and continue to deny that they have committed or attempted to commit any violations of law, any breach of fiduciary duty owed to RINO or its shareholders, or any other wrongdoing whatsoever. Without admitting the validity of any of the claims Plaintiffs have asserted in the Actions, or any liability with respect thereto, the Defendants, including RINO, have concluded that it is desirable that the claims be settled on the terms and subject to the conditions set forth herein. Defendants are entering into this Settlement because it will eliminate the uncertainty, distraction, disruption, burden, risk, and expense of further litigation. Further, Defendants acknowledge that the Settlement is fair, reasonable, adequate, and in the best interests of RINO and Current RINO Shareholders.

### IV. THE SETTLEMENT HEARING

The Settlement Hearing will be held before the Honorable Miranda M. Du on _____, 2012 at _____ __.m. at the United States District Court for the District of Nevada, Lloyd D. George U.S. Courthouse, located at 333 Las Vegas Blvd South, Las Vegas, NV 89101 to determine: (i) whether the proposed Settlement, upon the terms set forth in the Stipulation, should be finally approved in all respects as fair, reasonable, and adequate; (ii) whether the Final Order and Judgment approving the Settlement should be entered; (iii) whether Plaintiffs' Counsel's agreed-to Fee Award should be finally approved and (iv) whether the Incentive Awards should be finally approved. The Settlement Hearing may be continued by the Court at the Settlement Hearing, or at any adjourned session thereof without further notice.

### V. THE SETTLEMENT

The terms and conditions of the proposed Settlement are set forth fully in the Stipulation described above. The Stipulation has been filed with the Court and is available for viewing at

the Clerk of the Court's Office for the U.S. District Court for the District of Nevada, Lloyd D. George U.S. Courthouse, 333 Las Vegas Blvd South, Las Vegas, NV 89101. The following is only a summary of its terms.

As a result of the filing, prosecution, and proposed settlement of the Actions, RINO will receive the benefit of approximately $7 million from certain of the Individual Defendants and/or their insurance carrier, which RINO will cause to be used to settle the related securities class action captioned Stream SICAV v. RINO International Corp. et al., Case No. 2:10-cv-08695-DDP-VBK, pending in the U.S. District Court for the Central District of California. Defendants acknowledge that this Settlement will confer substantial benefits upon RINO and Current RINO Shareholders.

The Settlement specifically does not include the Nevada State Action's claims against the Auditor Defendants. Plaintiffs and counsel in the Nevada State Action shall have the exclusive and sole ability to pursue any and all claims against the Auditor Defendants. Upon election and notice by the plaintiffs and counsel in the Nevada State Action to the Defendants, Nominal Defendant RINO shall assign any and all rights it has against the Auditor Defendants to the plaintiffs in the Nevada State Action. Such assignment shall include, and shall be contingent upon, the assignment by RINO of any and all recovery obtained by the Nevada State Plaintiffs against the Auditor Defendants to the Current RINO Shareholders.

## VI. DISMISSAL AND RELEASES

Upon the Effective Date, Plaintiffs' Released Persons, RINO, and each of RINO's shareholders (solely in their capacity as RINO shareholders), including the California Federal Plaintiffs, shall be deemed to have, and by operation of the Judgment shall have, fully, finally and forever released, relinquished and discharged as against Defendants' Released Persons any

and all of Plaintiffs' Released Claims, and each of Plaintiffs' Released Persons, RINO, and each of RINO's shareholders (solely in their capacity as RINO shareholders) shall forever be barred and enjoined from instituting, commencing, or prosecuting any and all of Plaintiffs' Released Claims against any of Defendants' Released Persons.

Upon the Effective Date, Defendants' Released Persons shall be deemed to have, and by operation of the Judgment shall have, fully, finally and forever released, relinquished and discharged as against Plaintiffs' Released Persons, RINO, and all of RINO's shareholders (solely in their capacity as RINO shareholders) any and all of Defendants' Released Claims, and Defendants' Released Persons shall forever be barred and enjoined from instituting, commencing, or prosecuting any and all of Defendants' Released Claims against any of Plaintiffs' Released Persons, RINO, or any of RINO's shareholders (solely in their capacity as RINO shareholders).

## VII.   ATTORNEYS' FEES AND EXPENSES

As a unitary part of the Settlement and in recognition of the substantial benefits conferred upon RINO and Current RINO Shareholders as a result of the initiation, prosecution and settlement of the Actions, RINO, on behalf of all Defendants, and the Board, shall cause to be paid to Plaintiffs' Counsel an award of attorneys' fees and expenses in the Actions in the total amount of $475,000 (the "Fee Award").  The Parties mutually agree that this Fee Award is fair and reasonable in light of the benefits bestowed upon RINO and Current RINO Shareholders by the Stipulation.   Plaintiffs' Counsel shall request final approval of the Fee Award at the Settlement Hearing.  To date, Plaintiffs' Counsel have neither received any payment for their services in conducting the Actions, nor have they been reimbursed for their out-of-pocket

expenses incurred. Plaintiffs' Counsel believe that the Fee Award agreed to is within the range of attorneys' fees approved by courts under similar circumstances in litigation of this type.

Additionally, in light of the benefits Plaintiffs have created for RINO and all Current RINO Shareholders, Plaintiffs may apply for Court-approved incentive awards in the amount of $2,000 each ("Incentive Awards"). The Incentive Awards shall be funded from the Fee Award to the extent that the Fee Award is approved in whole or in part. Defendants shall take no position on the Incentive Awards.

## VIII. THE RIGHT TO OBJECT AND/OR BE HEARD AT THE SETTLEMENT HEARING

Any Current RINO Shareholder may object and/or appear and show cause, if he, she, or it has any concern, why the Settlement should not be approved as fair, reasonable, and adequate, or why the Final Order and Judgment should not be entered thereon, or why the Fee Award or Incentive Awards should not be approved; provided, however, unless otherwise ordered by the Court, no Current RINO Shareholder shall be heard or entitled to contest the approval of the terms and conditions of the Settlement, or, if approved, the Final Order and Judgment to be entered thereon approving the same, or the Fee Award, unless that shareholder has, *at least fourteen (14) business days prior to the Settlement Hearing*: (1) filed with the Clerk of the Court a written objection to the Settlement setting forth: (a) the nature of the objection; (b) proof of ownership of RINO common stock through the date of the Settlement Hearing, including the number of shares of RINO common stock and the date of purchase; and (c) any documentation in support of such objection; and (2) if a Current RINO Shareholder intends to appear and requests to be heard at the Settlement Hearing, such shareholder must have, in addition to the requirements of (1) above, filed with the Clerk of the Court: (a) a written notice of such shareholder's intention to appear; (b) a statement that indicates the basis for such appearance;

and (c) the identities of any witnesses the shareholder intends to call at the Settlement Hearing and a statement as to the subjects of their testimony.  If a Current RINO Shareholder files a written objection and/or written notice of intent to appear, such shareholder must also simultaneously serve copies of such notice, proof, statement, and documentation, together with copies of any other papers or briefs such shareholder files with the Court (either by hand delivery or by first class mail) upon each of the following:

<table>
<tr>
<td>

Brett D. Stecker
THE WEISER LAW FIRM, P.C.
22 Cassatt Ave
Berwyn, PA 19312

*Counsel for Plaintiffs*

Jessica Valenzuela Santamaria
COOLEY LLP
Five Palo Alto Square
3000 El Camino Real
Palo Alto, CA 94306

*Counsel for Defendant
Kennith C. Johnson*

</td>
<td>

Patrick D. Robbins
SHEARMAN & STERLING LLP
Four Embarcadero Center, Suite 3800
San Francisco, CA 94111

*Counsel for Nominal Defendant
RINO International Corp.*

Neal A. Potischman
DAVIS POLK & WARDWELL LLP
1600 El Camino Real
Menlo Park, CA 94025

*Counsel for Defendant
Weiguo Zhang*

</td>
</tr>
</table>

Any Current RINO Shareholder who does not make his, her, or its objection in the manner provided herein shall be deemed to have waived such objection and shall forever be foreclosed from making any objection to the fairness, reasonableness, or adequacy of the settlement and the Fee Award and Incentive Awards as incorporated in the Stipulation, unless otherwise ordered by the Court, but shall otherwise be bound by the Final Order and Judgment to be entered and the releases to be given.

## IX. CONDITIONS FOR SETTLEMENT

The Settlement is conditioned upon the occurrence of certain events described in the Stipulation, which requires, among other things: (1) the Effective Date of the settlement in the

California Federal Securities Class Action (which received preliminary approval on May 21, 2012) has occurred (as the term "Effective Date" is defined in the Stipulation of Settlement filed in that action); (2) the Court has entered the Final Order and Judgment; (3) the Fee Award, if any, has been approved by the Court and paid by RINO; and (4) the Final Order and Judgment has become Final. If, for any reason, any one of the conditions described in the Stipulation is not met and the entry of the Final Order and Judgment does not occur, the Stipulation might be terminated and, if terminated, will become null and void; and the Parties to the Stipulation will be restored to their respective positions as of November 28, 2012.

## X. EXAMINATION OF PAPERS AND INQUIRIES

This Notice contains only a summary of the terms of the Settlement. For a more detailed statement of the matters involved in the Actions, reference is made to the Stipulation, which may be inspected at the Clerk of the Court's Office, Lloyd D. George U.S. Courthouse, U.S. District Court for the District of Nevada, 333 Las Vegas Blvd South, Las Vegas, NV 89101, during business hours of each business day.

Any other inquiries regarding the Settlement or the Actions should be addressed in writing to the following:

BRETT D. STECKER
THE WEISER LAW FIRM, P.C.
22 Cassatt Ave
Berwyn, PA 19312
Telephone: (610) 225-2677
Facsimile: (610) 225-2678

*Counsel for Plaintiffs*

**PLEASE DO NOT TELEPHONE THE COURT OR RINO**

**REGARDING THIS NOTICE.**

# Exhibit C

John P. Aldrich, Esq.
Nevada State Bar No.: 6877
**ALDRICH LAW FIRM, LTD**
1601 S. Rainbow Blvd., Suite 160
Las Vegas, Nevada 89146
(702) 853-5490

Kip B. Shuman, Esq.
Rusty E. Glenn, Esq.
**THE SHUMAN LAW FIRM**
885 Arapahoe Avenue
Boulder, CO 80302
(303) 861-3003
(303) 484-4886 (fax)

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEVADA

|  |  |
|---|---|
| IN RE RINO INTERNATIONAL CORPORATION DERIVATIVE LITIGATION | ) ) ) ) |
| This Document Relates To: | ) ) ) |
| ALL ACTIONS | ) ) ) |

Lead Case No. 2:10-cv-02209-MMD-GWF
(Consolidated with case no. 2:10-cv-02244-KJD-DWF)

**[PROPOSED] ORDER PRELIMINARILY APPROVING
DERIVATIVE SETTLEMENT AND PROVIDING FOR NOTICE**

WHEREAS, the Parties to the above-captioned consolidated shareholder derivative actions (the "Nevada Federal Action") have made an application, pursuant to Federal Rule of Civil Procedure 23.1, for an order: (i) preliminarily approving the Settlement of the Nevada Federal Action, in accordance with the Stipulation and Agreement of Settlement dated November 28, 2012 (the "Stipulation"), which, together with the exhibits annexed thereto, sets forth the terms and conditions for the proposed Settlement and dismissal of the Nevada Federal Action with prejudice, upon the terms and conditions set forth therein; and (ii) approving the form and content of the Notice to Current RINO Shareholders (the "Notice") for publication in *Investor's Business Daily*;

1

WHEREAS, all capitalized terms contained herein shall have the same meanings as set forth in the Stipulation (in addition to those capitalized terms defined herein); and

WHEREAS, the Court has read and considered the Stipulation and the exhibits annexed thereto.

NOW THEREFORE, IT IS HEREBY ORDERED:

1. The Court does hereby preliminarily approve, subject to further consideration at the Settlement Hearing described below, the Stipulation and the Settlement set forth therein, including the terms and conditions for settlement and dismissal with prejudice of the Nevada Federal Action.

2. A hearing (the "Settlement Hearing") shall be held before this Court on _____, 2012 at _____ __.m. to determine: (i) whether the terms and conditions of the Settlement set forth in the Stipulation are fair, reasonable, and adequate to RINO and Current RINO Shareholders and should be finally approved by the Court; (ii) whether a Final Order and Judgment approving the Settlement, as provided for in paragraph 1.2 of the Stipulation and attached thereto as Exhibit C, should be entered; and (iii) whether Plaintiffs' Counsel's agreed-to Fee Award should be finally approved.

3. The Court approves, as to form and content, the Notice attached as Exhibit A to the Stipulation and for convenience annexed as Exhibit A hereto, and finds that the publication of such Notice substantially in the manner and form set forth in this Order meets the requirements of Federal Rule of Civil Procedure 23.1 and due process, and is the best notice practicable under the circumstances and shall constitute due and sufficient notice to all Persons entitled thereto.

4. Within ten (10) business days of the Court's entry of the Preliminary Approval Order, RINO shall cause the Notice to be published one time in *Investor's Business Daily*.

5.      All papers in support of the Settlement, the Fee Award, and the Incentive Awards shall be filed with the Court and served at least twenty-eight (28) days prior to the Settlement Hearing and any reply papers shall be filed with the Court at least seven (7) days prior to the Settlement Hearing.

6.      Any Current RINO Shareholder may object and/or appear and show cause, if he, she, or it has any concern, why the Settlement should not be approved as fair, reasonable, and adequate, or why the Final Order and Judgment should not be entered thereon, or why the Fee Award or Incentive Awards should not be approved; provided, however, unless otherwise ordered by the Court, no Current RINO Shareholder shall be heard or entitled to contest the approval of the terms and conditions of the Settlement, or, if approved, the Final Order and Judgment to be entered thereon approving the same, or the Fee Award, unless that shareholder has, *at least fourteen (14) business days prior to the Settlement Hearing*: (1) filed with the Clerk of the Court a written objection to the Settlement setting forth: (a) the nature of the objection; (b) proof of ownership of RINO common stock through the date of the Settlement Hearing, including the number of shares of RINO common stock and the date of purchase; and (c) any documentation in support of such objection; and (2) if a Current RINO Shareholder intends to appear and requests to be heard at the Settlement Hearing, such shareholder must have, in addition to the requirements of (1) above, filed with the Clerk of the Court: (a) a written notice of such shareholder's intention to appear; (b) a statement that indicates the basis for such appearance; and (c) the identities of any witnesses the shareholder intends to call at the Settlement Hearing and a statement as to the subjects of their testimony.  If a Current RINO Shareholder files a written objection and/or written notice of intent to appear, such shareholder must also simultaneously serve copies of such notice, proof, statement, and documentation, together with copies of any other papers or briefs such shareholder files with the Court (either by hand delivery or by first class mail) upon each of the following:

3

behalf of RINO, any action or proceeding in any court or tribunal asserting any of Plaintiffs' Released Claims.

11.   Neither the Stipulation (including any exhibits attached thereto) nor the Settlement, nor any act performed or document executed pursuant to or in furtherance of the Stipulation or the Settlement: (a) is or may be deemed to be or may be offered, attempted to be offered or used in any way by the Parties as a presumption, a concession or an admission of, or evidence of, the validity of any of Plaintiffs' Released Claims, or of any fault, wrongdoing or liability of the Individual Defendants or RINO, or the validity of Plaintiffs' Released Claims; or (b) is intended to be offered or received as evidence or used by any other Person in any other action or proceedings, whether civil, criminal, or administrative agency, or other tribunal.  The Parties, Plaintiffs' Counsel, Defendants' Counsel, Defendants' Released Persons and Plaintiffs' Released Persons may file the Stipulation and/or the Final Order and Judgment in any action that may be brought against them in order to support a defense or counterclaim based on principles of *res judicata*, collateral estoppel, release, good-faith settlement, judgment bar or reduction, or any other theory of claim preclusion or issue preclusion or similar defense or counterclaim.

12.   The Court reserves the right to adjourn the date of the Settlement Hearing or modify any other dates set forth herein without further notice to Current RINO Shareholders, and retains jurisdiction to consider all further applications arising out of or connected with the Settlement. The Court may approve the Settlement and any of its terms, with such modifications as may be agreed to by the Parties, if appropriate, without further notice to Current RINO Shareholders.

IT IS SO ORDERED.

DATED: _____

HONORABLE MIRANDA M. DU

UNITED STATES DISTRICT JUDGE